CROWELL & MORING LLP
Kent B. Goss (CSB No. 131499)
  KGoss@crowell.com
Valerie M. Goo (CSB No. 187334)
  VGoo@crowell.com
Raija Horstman (CSB No. 277301)
  RHorstman@crowell.com
Kenneth R. Taketa (CSB No. 320365)
  KTaketa@crowell.com
Ahnna L. Chu (CSB No. 351207)
  AChu@crowell.com
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile:  213.622.2690

Attorneys for Plaintiff EVOX Productions, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVOX PRODUCTIONS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>STABILITY AI, INC., a Delaware corporation; STABILITY AI LTD., a UK corporation; STABILITY AI US SERVICES CORPORATION, a Delaware corporation; RUNWAY AI, INC., a Delaware corporation; HUGGING FACE, INC., a Delaware corporation; DEVIANTART, INC., a Delaware corporation; and DOES 1 through 10, inclusive.<br><br>Defendants. | Case No. 2:26-cv-7201<br><br>**COMPLAINT FOR:**<br><br>**(1) DIRECT COPYRIGHT INFRINGEMENT – UNAUTHORIZED AI TRAINING (VIOLATION OF THE REPRODUCTION RIGHT, 17 U.S.C. § 106(1))**<br><br>**(2) DIRECT COPYRIGHT INFRINGEMENT – UNAUTHORIZED AI-GENERATED IMAGES (VIOLATION OF THE REPRODUCTION, DERIVATIVE WORK, DISTRIBUTION, AND PUBLIC DISPLAY RIGHTS, 17 U.S.C. § 106(1)-(3), (5))**<br><br>**(3) DIRECT COPYRIGHT INFRINGEMENT – UNAUTHORIZED DISTRIBUTION (VIOLATION OF THE REPRODUCTION,** |

**DISTRIBUTION, AND PUBLIC DISPLAY RIGHTS, 17 U.S.C. § 106(1), (3), (5))**

(4) **CONTRIBUTORY COPYRIGHT INFRINGEMENT**

(5) **VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1202**

**DEMAND FOR JURY TRIAL**

Plaintiff EVOX Productions, LLC alleges in this action as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over the action for the infringement of United States copyrights pursuant to 17 U.S.C. § 501 *et seq.* and 28 U.S.C. §§ 1331 and 1338(a).

2.      This Court has personal jurisdiction over Defendants because, on information and belief, Defendants regularly conduct and have conducted business in California and in this District by, among other things, licensing and supplying products and services throughout the state of California. Additionally, Defendants' conduct, which constitutes copyright infringement, occurred in this District, and has caused Plaintiff to suffer harm in this District.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, *inter alia*, (a) Defendants are doing business within this District and (b) Defendants' acts or omissions giving rise to this lawsuit, as well as substantial injury to Plaintiff, have occurred and will continue to occur in interstate commerce, in the State of California, and in this District.

## PARTIES

4.      Plaintiff EVOX Productions, LLC ("EVOX"), a small business that has been in existence for over 30 years, is a Delaware Limited Liability Company with its principal place of business at 13433 Benson Ave, Chino, CA 91710.

5.      On information and belief, Defendant Stability AI, Inc. ("Stability US") is a Delaware corporation with its principal place of business at 10250 Constellation Boulevard, Suite 2300, Los Angeles, California 90067.

6.      On information and belief, Defendant Stability AI Ltd ("Stability UK") is a United Kingdom corporation with its principal place of business at Fora-United House, 9 Pembridge Road, London W11 3JY England, UK. Stability UK has admitted that a substantial number of Stability UK's employees, including senior executives, reside in California. *See Getty Images (US), Inc., v. Stability AI*

*LTD, et al.*, Case No. 1:23-cv-00135-JLH, Dkt. No. 47 at *3–5 (D. Del., Jul. 29, 2024) ("*Getty*"). Moreover, the artificial intelligence model "Stable Diffusion" at issue in this litigation was developed in part by individuals that provided services to Stability UK while working in California. *Id*.

7. On information and belief, Stability UK is a wholly owned subsidiary of Stability US.

8. On information and belief, Defendant Stability AI US Services Corporation ("Stability Services") is a Delaware corporation with its principal place of business at 10250 Constellation Boulevard, Suite 2300, Los Angeles, California 90067.

9. On information and belief, Stability Services is a wholly owned subsidiary of Stability US. The individuals that reside in California that currently provide services to Stability UK are employed by Stability Services. *Id*. Defendants Stability US, Stability UK, and Stability Services are collectively referred to as the "Stability Entities."

10. On information and belief, Defendant Runway AI, Inc. ("Runway") is a Delaware corporation with its principal place of business at 18 West 18th St., 11th Floor, New York, NY 10011. On information and belief, Runway maintains a local office in San Francisco with employees residing in California.

11. On information and belief, Defendant Hugging Face, Inc. ("Hugging Face") is a Delaware corporation with its principal place of business at 20 Jay Street, Suite 620, Brooklyn, New York 11201. On information and belief, Hugging Face is a remote-first company, but has a number of employees residing in California.

12. On information and belief, DeviantArt, Inc. ("DeviantArt") is a Delaware corporation with its principal place of business at 100 Gansevoort Street, New York NY 10014. On information and belief, DeviantArt operates its primary corporate office in Los Angeles with a number of employees residing in California.

13.    Plaintiff is unaware of the true names and capacities of Does 1 through 10, and therefore sues these Defendants by these fictitious names. Plaintiff will amend this complaint to allege the Doe Defendants' true names and capacity when they become known to Plaintiff.

14.    The abovementioned Defendants, collectively, will be referred to as the "Defendants."

15.    On information and belief, Defendants Stability US, Stability UK, and Stability Services were and are alter egos of one another. There exists, and at all relevant times there existed, a unity of interest and ownership among these entities such that any individuality and separateness between them has ceased, and each entity is and was a mere instrumentality, agent, conduit, and/or alter ego of the others. On information and belief, these entities commingled their funds, assets, and resources; failed to maintain adequate corporate formalities and records; held themselves out to the public as a single enterprise; shared common officers, directors, and employees; and operated as a single, integrated business. Adherence to the fiction of separate corporate existence among these entities would promote injustice and permit an inequitable result. Accordingly, each of these entities is jointly and severally liable for the acts and omissions of the others as alleged herein.

16.    On information and belief, in performing the acts or omissions described in this Complaint, Defendants were acting in concert, joint venture, partnership, or common enterprise with each other and were acting within the scope of such joint venture, partnership, or common enterprise to commit the acts alleged herein. Each Defendant sued herein aided and abetted the other with the intent that each would be successful in their mutual endeavors. In furtherance of this common enterprise, each Defendant exercised control over, and contributed resources, to the joint undertaking.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

5    COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

## ALLEGATIONS

### EVOX Is the Industry Leader in Professional Automotive Photography.

17.    EVOX creates and licenses high-quality, digital images, and photographs of virtually every commercially available automotive vehicle make and model sold in the United States since model year 2000. EVOX is the leading creator and licensor of automotive photographs in the United States, and its photographs are widely recognized as the best in its field.

18.    EVOX owns and controls the copyrights in over one million digital photographs under the United States Copyright laws and has obtained Certificates of Copyright Registration from the Register of Copyrights for these works. Each copyright registration includes multiple photographs, each with their own title, for a specific automobile. A list of EVOX's federally registered copyrights which Defendants have infringed by the acts complained of herein is attached as Exhibit A, which is incorporated by reference. A complete list of EVOX's copyrighted photographs which Defendants have infringed are identified by title and copyright registration number in the attached Exhibits B and C (the "Copyrighted Photographs"), which are incorporated by reference. True and correct copies of the Certificates of Registration for each Copyrighted Photograph at issue in this case are attached as Exhibit D, which is incorporated by reference.

19.    EVOX licenses the Copyrighted Photographs to numerous automotive dealers and automotive websites, including but not limited to, Kelly Blue Book, TrueCar, and Capital One.

20.    EVOX has invested substantial time, money, talent, and creative expression in connection with the creation, production, development, and marketing of the Copyrighted Photographs.

21.    Photographing automobiles poses unique challenges that EVOX has solved through its creative decisions and unique process that result in a distinct EVOX composition, selection and arrangement of protected expressive choices.

Due to its highly polished surface, when a car is photographed, the photograph will also record an image of the car's environment that is reflected on its shiny exterior. In addition, cars photographed outdoors necessarily capture unwanted reflections and lighting that both distract and detract from the underlying photo. EVOX has solved these issues by using a specially designed photography studio and advanced editing techniques.

22.    Traditionally, EVOX shot the Copyrighted Photographs in a photography studio specifically designed and built for car photography. The studio features a white-walled cyclorama—with curved walls and no visible edges—to create the illusion of an endless background. In front of the cyclorama sits a large, motorized turntable on which cars can be driven and precisely centered using a laser-based procedure. The turntable has gray walls shaped to simulate the horizon line, allowing for soft gray reflections and brighter highlights above them on the car's side panels, helping define the vehicle's shape in photos without any color contamination. However, in recent years EVOX photographers have photographed cars on location and the "studio" effect is further enhanced with photo-realistic, computer assisted editing techniques.

23.    The Copyrighted Photographs reflect the product of numerous deliberate and carefully considered creative decisions made by EVOX's photographers and production team. These creative decisions include, among others:

    a.    The composition and framing of the vehicle, including the precise positioning and angle of the vehicle on the turntable;

    b.    The degree to which the vehicle's wheels are turned;

    c.    The selection of camera lens, focal length, and focus;

    d.    The distance of the vehicle from the camera;

    e.    The height of the camera relative to the vehicle at the top of the vehicle's wheel wells;

f. The use, color, and position of overhead lighting;

g. The placement of the vehicle against the white cyclorama background;

h. The creation of soft-edge drop shadows underneath the vehicle;

i. The lack of any noticeable reflection on the windshield and side windows to allow the interior of the vehicle to stand out;

j. The position and brightness of the sheen on the vehicle's black rubber tires based on the positioning of the vehicle and the white cyclorama; and

k. The use of gray walls around the turntable that are shaped to simulate a horizon line to create soft gray reflections and brighter highlights on the vehicle's side panels to define its shape without adding color contamination.

24. The product of the combination, selection, and arrangement of these protectable expressive choices defines each and every Copyrighted Photograph that is immediately recognizable as distinctively EVOX's.

25. The Copyrighted Photographs are sought after because of their consistent high quality and comprehensive coverage of all automotive makes and models. Indeed, over the life of its Copyrighted Photographs library, EVOX has invested over $54 million dollars into its development. Upon information and belief, the actual present market value of that investment based on current dollars would easily exceed that $54 million number by several multiples.

26. In addition to embedding copyright management information ("CMI") in a Copyrighted Photograph's metadata which identifies EVOX as the image creator and copyright holder, EVOX also marks its Copyrighted Photographs with "©EVOX IMAGES." The metadata for the Copyrighted Photographs can also include technical specifications such as the dimension, resolution, exposure, and ISO speed used to capture the image, and other information such as details

CROWELL
& MORING LLP
ATTORNEYS AT LAW

8    COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

regarding the camera used to capture the image, the date the image was taken, and certain information about the make, model, and year of the vehicle in the image.

27.    EVOX licenses access and use of its Copyrighted Photographs. EVOX closely controls and limits the reproduction, distribution, and display of its copyrighted works through licensing agreements. EVOX licenses its Copyrighted Photographs in packages, in other groupings, or on an individual, "à la carte" basis.

28.    EVOX has developed a successful business licensing its Copyrighted Photographs with a client base that includes automotive dealers, automotive portals, rental car companies, travel sites, insurance companies, and other verticals.

29.    EVOX maintains two secure websites to facilitate licensing of its Copyrighted Photographs.

30.    First, EVOX maintains a public facing website, "evoxstock.com" that allows the public to individually license Copyrighted Photographs for specific terms and usage. EVOX adds an "EVOX Stock" watermark to the Copyrighted Photographs that are publicly displayed on "evoxstock.com":



31.    Second, EVOX has a subscription-based license for its entire library of Copyrighted Photographs for clients in the automotive industry that allows the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

licensee to display Copyrighted Photographs on the licensee's websites through a secure application programming interface (API) or secure file transfer protocol (FTP). EVOX's licensees are provided with credentials to access EVOX's API or FTP, and EVOX monitors its API to detect and prevent unauthorized access. EVOX also requires its licensees to take appropriate measures to prevent the unauthorized duplication or downloading of its Copyrighted Photographs from their websites, and EVOX prohibits licensees from sub-licensing the use of Copyrighted Photographs. The Copyrighted Photographs licensed through the API or FTP are all marked with the "©EVOX IMAGES" mark.

32.    EVOX also uses a "Robots.txt" protocol for both of its websites to prevent search engine crawlers, or "bots," from the unauthorized indexing of Copyrighted Photographs. The "Robots.txt" protocol has been in place since the launch of the "evoxstock.com" website in 2012 to prevent the unauthorized crawling of Copyrighted Photographs.

33.    The terms of service for both of EVOX's websites prohibit anyone from copying, reproducing, publishing, transmitting, transferring, editing, creating derivative works, distributing, reposting, displaying, commercially exploiting, or infringing on any Copyrighted Photographs displayed on the websites.

34.    The terms of service for both of EVOX's websites also expressly prohibit the "use or attempt to use any 'deep-link,' 'scraper,' 'robot,' 'bot,' 'spider,' 'data mining,' 'computer code' or any other automated device, program, tool, algorithm, process or methodology or manual process having similar processes or functionality, to access, acquire, copy, or monitor any portion of the site, any data or content found on or accessed through the site[.]"

35.    EVOX's licensees are also required to implement appropriate technologies and security procedures to prevent the unauthorized use of Copyrighted Photographs by third parties, which may include, but are not limited to, measures such as the use of "Robots.txt instructions". Licensees are also

required to include a prohibition against piracy of the Copyrighted Photographs in the terms and conditions of any website that displays the Copyrighted Photographs. And EVOX reserved the right to pursue all rights and remedies available to it, including without limitation, claims for copyright infringement, against any user of any Copyrighted Photographs that were licensed by EVOX to third parties.

36.    For example, the terms and conditions for the website "kbb.com", operated by EVOX's licensee Kelley Blue Book, state "[a]ll images on this site are legally protected . . . and are not to be used, reproduced, modified or distributed without written consent of Kelley Blue Book and/or Evox Productions LLC."[1] Further, the Copyrighted Photographs displayed on "kbb.com" display in the lower right hand corner "©EVOX IMAGES."[2] In addition, Kelley Blue Book has express robots.txt instructions (including the Disallow: /pixall/) which prohibit crawling or scraping of the images (including the Copyrighted Photographs).[3] EVOX also retains all rights and remedies, including claims for copyright infringement, for all Copyrighted Photographs displayed on "kbb.com".

**The Stability Entities Paid to Have EVOX's Copyrighted Photographs Incorporated Into a Massive AI Training Dataset.**

37.    LAION (acronym for "Large-Scale Artificial Intelligence Open Network") is an organization based in Hamburg, Germany, with a stated goal "to make large-scale machine learning models, datasets and related code available to the general public," and makes its projects available for free.

38.    On information and belief, the Stability Entities funded LAION's creation of LAION-5B, a dataset of 5.85 billion image-caption pairs, that was released in October 2022. On information and belief, the Stability Entities' then CEO Emad Mostaque and the Stability Entities provided financial funding and

---

[1] https://www.kbb.com/company/copyrights-and-trademarks/

[2] *See*, *e.g.*, https://www.kbb.com/audi/q4-e-tron/2025/

[3] https://www.kbb.com/robots.txt

computing resources to LAION for the creation of the LAION-5B dataset. Indeed, LAION's announcement of the LAION-5B dataset specifically thanked the Stability Entities and Hugging Face as sponsors of the project. On information and belief, a substantial reason as to why the Stability Entities funded LAION-5B was so that the Stability Entities could have images to sufficiently train an AI image generation diffusion model called Stable Diffusion.

39.     As explained in a paper accompanying LAION-5B, "LAION-5B: An open large-scale dataset for training next generation image-text models" (the "LAION-5B Paper")[4], the LAION-5B dataset contains a list of URL links to images hosted on third-party websites.

40.     The LAION-2B-en dataset is a subset of LAION-5B, and contains 2 billion English-language image-caption pairs.

**LAION's Dataset Contains Links to Over 100,000 of EVOX's Copyrighted Photographs.**

41.     Common Crawl is a publicly available repository containing copies of hundreds of billions of web pages scraped from across the internet, including images hosted on third-party websites such as websites with valid licenses to publicly display the Copyrighted Photographs.

42.     LAION used Common Crawl as the starting point for building its training datasets—parsing through Common Crawl's metadata records to identify URLs linking to images paired with descriptive text captions. Through this process, URLs linking to a substantial number of Copyrighted Photographs were identified and incorporated into the LAION-5B and LAION-2B-en datasets.

43.     LAION was not and is not authorized to reproduce, distribute, display, or otherwise use the Copyrighted Photographs. Indeed, the LAION-5B dataset included a "score" for each URL that indicated the likelihood that a particular

---

[4] https://arxiv.org/pdf/2210.08402

image contained a watermark or other distinctive mark signaling the presence of CMI. The Stability Entities, Runway, and DeviantArt could have used this score to train Stable Diffusion and their respective AI image generating models on images that did not include CMI, but chose not to.

44. The LAION-2B-en dataset contains URL links to at least 103,957 Copyrighted Photographs—all hosted on websites belonging to third party automotive companies—as documented by EVOX in a search of the LAION-2B-en dataset. These 103,957 Copyrighted Photographs are identified in Exhibit B.

45. As noted above, EVOX's third party licensees are required to take appropriate measures to prevent unauthorized reproduction of the Copyrighted Photographs and were required to display EVOX's images with the "©EVOX IMAGES" mark in the lower right-hand corner of the photograph.

46. The LAION-2B-en dataset contains links to Copyrighted Photographs appearing across numerous URLs containing the name "EVOX," including, for example:

```
https://www.vehiclehistory.com/evox_compressed/toyota/camry/2021/14732/toyota-camry-2021-089-14732-768.jpg
```

```
https://file.kbb.com/kbb/vehicleimage/evoxseo/cp/m/12415/2018-honda-accord-front_12415_032_480x240_wa.png
```

47. Many of the 103,957 URL links to the Copyrighted Photographs in the LAION datasets also contain the exact EVOX "file name" for the Copyrighted Photograph displayed at the link. For example, the file name for the EVOX Copyrighted Photograph in the URL below is "5410_st0640_046.jpg":

```
https://images.carsaver.com/evox/stills_white_0640/MY2009/5410/5410_st0640_046.jpg
```

48.     An excerpt of the Copyright Registration for the Copyrighted Photograph displayed at this URL, also contains the "5410" prefix for the Title of the Work(s) that is found in the file name:



### Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**
VA 1-643-565

**Effective date of registration:**
August 5, 2008

**Title** ──────────

Title of Work:  VIF5410 2009 Ford Mustang GT 2 Door Coupe

**Completion/ Publication** ──────
Year of Completion:  2008
Date of 1st Publication:  July 25, 2008          Nation of 1st Publication:  United States

**Author** ──────
■          Author:  eVox Productions LLC
Author Created:  photograph(s)

Work made for hire:  Yes
Domiciled in:  United States

49.     The images displayed at the collected URLs in the LAION datasets are identified as EVOX's Copyrighted Photographs and contain the "©EVOX IMAGES" trademark, as seen in the below example:



CROWELL
& MORING LLP
ATTORNEYS AT LAW

50.    On information and belief, the actual number of Copyrighted Photographs incorporated into the LAION datasets may be substantially higher, as many of the Copyrighted Photographs are distributed through third-party platforms whose URLs may not refer to EVOX, or there may be circumstances whereby it will be found that EVOX metadata was removed, or there are other LAION datasets that include the Copyrighted Photographs, or other related scenarios. As such, EVOX's investigation is ongoing.

51.    Because the LAION datasets contained only URLs, anyone who wished to use the LAION datasets for AI training must first download, copy, and/or save the actual images from those URLs, as explained in the LAION-5B Paper. Information on LAION's website further confirms that the images found at the URLs in the LAION-5B dataset must be downloaded from the URLs before the LAION datasets can be used to train AI models.[5] Notably, the LAION-5B Paper explicitly states that LAION "do[es] not own the copyright of the images or text" and that the LAION-5B dataset "should only be used for academic research purposes." *See* LAION-5B Paper at 3, 30.

52.    The unauthorized downloading and reproduction of Copyrighted Photographs during the development of each of the Defendants' AI image generator tools infringed on EVOX's right of reproduction. On information and belief, EVOX's CMI—including metadata concerning the author, title, or other identifying information, and/or the "©EVOX IMAGES" mark on the face of the images—was removed and/or altered after the Copyrighted Photographs were reproduced to train each of the Defendants' AI models in violation of 17 U.S.C. § 1202(b).

53.    On information and belief, the development of each of the Defendant's AI models, built from Stable Diffusion, required each of these Defendants to create multiple unauthorized copies of each of the Copyrighted Photographs in the

---

[5] https://laion.ai/blog/laion-5b/

LAION-5B and 2B-en datasets. First, the images were downloaded from the URLs in the LAION datasets. Then, copies of the images were "displayed" to the model during the AI model training. Finally, copies of Copyrighted Photographs were used to measure the AI model's performance by comparing the copied training images to the AI model outputs. Each of these unauthorized reproductions, distributions, and displays of a Copyrighted Photograph is a violation of protected copyrights under 17 U.S.C. § 106.

**Defendants Exploited EVOX's Copyrighted Photographs to Build and Commercialize their AI image generation models.**

54. Stable Diffusion is an AI image generation diffusion model software that was first released by the Stability Entities in August 2022. When a user submits a text prompt, Stable Diffusion generates a photographic-quality image in response to the prompt based on the images the model was trained on, including EVOX's 103,000+ Copyrighted Photographs in the LAION datasets.

55. Stable Diffusion was developed through a collaboration between the Stability Entities, Runway, and researchers at Ludwig Maximilian University in Munich, Germany. Runway was an essential research partner in this development, co-authoring the foundational paper titled "High-Resolution Image Synthesis with Latent Diffusion Models," which introduced the architecture upon which Stable Diffusion is built. Patrick Esser, a Principal Research Scientist at Runway, was one of the lead developers and original inventors of the latent diffusion model.

56. The Stability Entities' filings in the *Getty* case confirm that Stability UK's personnel, including individuals located in California, were involved in the development of Stable Diffusion. In particular, Mr. Alex Godwin and Mr. Zion English were machine learning engineers based in California who were involved in the development of various Stable Diffusion models for the Stability Entities.

57. The Stability Entities' webpage announcing the release of Stable Diffusion states that Stable Diffusion was a collaboration between Runway,

LAION, and the Stability Entities' "own generative AI team."[6] The announcement also states that Stable Diffusion will be hosted and distributed by "[o]ur friends at Hugging Face." Stable Diffusion was trained on LAION-5B, which includes LAION-2B-en, and was therefore trained on data that included at least 103,957 Copyrighted Photographs.

58.    Runway's own press releases confirm that Runway's own AI image generating latent diffusion model, "LDM-4" "was trained on the LAION database."[7]

59.    Because the LAION datasets only contain URLs pointing to images hosted on third-party websites, in order to use those datasets to train Stable Diffusion or other AI image generating models, the Stability Entities, Runway, and DeviantArt must have followed those URLs and downloaded the referenced images—necessarily making copies of those images, including the Copyrighted Photographs, in the process.

60.    On information and belief, Stability UK's then CEO Emad Mostaque said in a September 2022 interview that "Stable Diffusion is the model itself. It's a collaboration that we did with a whole bunch of people . . . We took 100,000 gigabytes of images and compressed it to a two-gigabyte file that can recreate any of those and iterations of those [images]."

61.    Indeed, following the release of Stable Diffusion, academic articles such as "Extracting Training Data from Diffusion Models" by Nicholas Carlini et al., have found that that diffusion models, like Stable Diffusion, "*memorize and regenerate individual training examples*."[8] The authors of the article confirm that Stable Diffusion version 1.4 was able to output copies of training images that are

[6] https://stability.ai/news-updates/stable-diffusion-announcement

[7] *See* https://research.runwayml.com/high-resolution-image-synthesis-with-latent-diffusion-models

[8] https://arxiv.org/abs/2301.13188

virtually identical to the original training image. *Id*.

62. Defendants' decision to train, download, distribute, and deploy their AI models built from Stable Diffusion that relied on millions of copyrighted images without authorization was not the inevitable result of how AI image generation works; it was a choice. The AI industry has demonstrated that it is technically feasible to design generative AI systems that respect copyright boundaries. There is nothing technically compulsory about training, distributing, or deploying AI models built on copyrighted works without permission: where rights holders have pushed back, AI companies have demonstrated the capacity to obtain licenses, implement content controls, or refrain from releasing tools altogether.

63. For example, following a cease-and-desist letter from Disney accusing Google of allowing its AI models to behave like an unlicensed "virtual vending machine" for intellectual property, Google restricted its Gemini AI image tool from generating images of Disney characters, with prompts now being declined with messages explaining that the request cannot be fulfilled due to "concerns from third-party content providers."[9]

64. Google's DeepMind and YouTube developed an AI music generation tool internally codenamed "Orca" that could generate music mimicking specific artists' voices and styles after being trained on copyrighted music videos. Google ultimately shelved Orca after concluding that releasing the tool to the public presented a "huge legal risk," and instead released a far more limited music generation tool restricted to artists who had explicitly consented to their work being used.[10]

---

[9] *See* Eric Hal Schwartz, Disney just shut down AI image prompts for its characters — and it might mark the end of the Wild West era of AI image creation, TechRadar (Feb. 11, 2026), https://www.techradar.com/ai-platforms-assistants/disney-just-shut-down-ai-image-prompts-for-its-characters-and-it-might-mark-the-end-of-the-wild-west-era-of-ai-image-creation.

[10] *See* Hugh Langley, Google's DeepMind and YouTube built and shelved 'Orca,' a 'mind-blowing' music AI tool that hit a copyright snag, Business Insider (Nov. 21, 2024), https://www.businessinsider.com/google-deepmind-orca-ai-music-tool-copyright-isues-2024-11.

65. Additionally, Getty Images and Perplexity entered into a multi-year licensing agreement covering the display of Getty Images content across Perplexity's AI-powered search and discovery tools, with Perplexity also committing to improvements in image attribution—including image credit with a link to the original source—to better educate users on how to use licensed imagery legally.[11]

66. Defendants here have made none of those choices with respect to EVOX's Copyrighted Photographs. Moreover, LAION expressly stated that the LAION datasets were to be used for academic purposes only—not for the development of commercial AI applications like Stable Diffusion.

67. The Stability Entities, Runway, and Hugging Face trained and distributed their AI models knowing it had been built on billions of images scraped from the internet without the consent of the works' owners. In addition, all the Copyrighted Photographs were marked with "©EVOX IMAGES" and/or included metadata containing CMI that advised the images were copyrighted by EVOX. On information and belief, each of the Defendants removed the CMI from the Copyrighted Photographs during the development of Stable Diffusion and/or as part of the training or output for their AI image generators.

68. Rather than implement controls or seek licenses, each of the Stability Entities and Runway released their AI models publicly and free of charge, and each built and commercialized their own AI image generation tools on top of it. Hugging Face served as the primary hosting and distribution platform through which Stable Diffusion was made freely available for public download. The Stability Entities and Runway have all released their own versions of their AI image generators on Hugging Face. Runway's Esser has stated in an interview on October 5, 2022 that

---

[11] *See* Getty Images, Getty Images and Perplexity Strike Multi-Year Image Partnership (Oct. 31, 2025), https://investors.gettyimages.com/news-releases/news-release-details/getty-images-and-perplexity-strike-multi-year-image-partnership.

Runway "released Stable Diffusion openly for everyone to use."[12]

69.    In fact, on August 16, 2022, Hugging Face posted on X that it was "looking forward to the full public release of Stable Diffusion in the coming days!"[13] Hugging Face also boasts on its website that it is an "AI platform for open [Machine Learning] ML. It hosts over 2M models, 1.5M datasets, and 1.5M AI apps (Spaces), all open and publicly available." (emphasis added.)[14]

70.    DeviantArt, an online community for artists to post and create artwork, offers a subscription-based AI image generation service called "DreamUp" that was built upon the Stable Diffusion model to generate images. DeviantArt's website states that DeviantArt's "DreamUp makes use of Stable Diffusion, a third-party AI model trained on image datasets gathered by LAION from across the internet[.]"[15]

71.    On information and belief, DeviantArt's Chief Technology Officer Chris Nell said on a public LAION Discord server, "I think our goals at DA [DeviantArt] are very aligned with LAION's . . . and want to collaborate as much as possible." Nell said of DreamUp: "we did not fine tune SD [Stable Diffusion] at all, so there aren't novel weights to share."

72.    In addition, Hugging Face hosts other datasets that can be downloaded by users for training AI models and AI image generators. One such image dataset, the "Stanford Cars" dataset, contains 8,144 images of automobiles for public download, including 225 Copyrighted Photographs. The 225 Copyrighted Photographs are identified in Exhibit C. Notably, unlike the LAION datasets, the "Stanford Cars" dataset displayed and distributed on Hugging Face's website

---

[12] *See* Runway Research, The research origins of Stable Diffusion (Oct. 5, 2022), https://research.runwayml.com/the-research-origins-of-stable-difussion.

[13] X, Post by @huggingface (Aug. 16, 2022), https://x.com/huggingface/status/1559604631642292226?s=20&utm_source=chatgpt.com

[14] Hugging Face Hub documentation, https://huggingface.co/docs/hub/index

[15] https://www.deviantart.com/team/journal/Create-AI-Generated-Art-Fairly-with-DreamUp-933537821

contains the actual Copyrighted Photographs—not just the URLs to the websites that display the Copyrighted Photographs. On information and belief, this "Stanford Cars" dataset containing 225 Copyrighted Photographs has been downloaded from Hugging Face at least 90,000 times.

73.    On information and belief, Hugging Face distributed the Stanford Cars dataset (including the 225 Copyrighted Photographs) over 5,000 times before Hugging Face registered a designated DMCA agent for the first time on April 17, 2025.

74.    EVOX did not discover, and in the exercise of reasonable diligence could not have discovered, Defendants' unauthorized reproduction and use of the Copyrighted Photographs until July 2023. Defendants' infringement was concealed from EVOX because the copying occurred through opaque, large-scale dataset ingestion and AI model training processes that were not visible or accessible to EVOX. The Copyrighted Photographs were downloaded from third-party URLs, ingested into massive datasets containing billions of image-caption pairs, and used to train AI models through processes that occurred entirely within Defendants' internal systems and infrastructure. Moreover, Defendants' removal and alteration of EVOX's CMI—including the "©EVOX IMAGES" mark and embedded metadata—further concealed the infringement by eliminating the identifying information that would have enabled EVOX to detect the unauthorized use of the Copyrighted Photographs.

**Defendants' AI-Generated Images Bear the Unmistakable Hallmarks of EVOX's Protected Creative Expression.**

75.    There is a substantial similarity between the Defendants' AI generated car images and EVOX's Copyrighted Photographs.

76.    Despite the existence of an almost infinite amount of possible rotational angles, camera heights, camera distances, and lighting configurations for automotive photography, each of the Defendants' AI tools consistently replicates

EVOX's specific creative combination, selection, and arrangement of the Copyrighted Photographs across every make and model it generates, rejecting the many available approaches that differ significantly from EVOX's style and instead reproducing the EVOX "look" and "feel" in a manner substantially the same as that used in the Copyrighted Photographs.

77.    In particular, each of the Defendants' AI generated images using each of their AI tools replicate the distinctive original selection, coordination, and arrangement of creative techniques that, taken as a whole, define EVOX's protectable expression in the Copyrighted Photographs. EVOX does not claim a monopoly over any single unprotectable element in isolation—such as a white cyclorama background or a three-quarter front angle, but rather over the original combination, selection, coordination, and arrangement of these creative choices that, in their aggregate, constitute protectable expression. Defendants' AI outputs copy that protected combination. Specifically, the Defendants' AI generated images replicate the following combination of EVOX's original creative choices, including:

   a.  Have soft-edged drop shadows that closely simulate those of the overhead lighting used to create EVOX's studio photographs;

   b.  Appear to have been photographed at approximately the same distance from the camera as EVOX photographs;

   c.  Have gray, colorless shadows reflected into them;

   d.  Are taken at approximately the same camera height as the EVOX photographs—at the height of the top of the wheel wells; and

   e.  Replicate the degree of car rotation used by EVOX in its three-quarter front views.

78.    The foregoing elements, taken together, reflect EVOX's original selection, coordination, and arrangement of protectable creative choices that define the distinctive EVOX composition. No single element standing alone constitutes the basis of EVOX's infringement claim; rather, it is the particular combination of

these creative decisions—applied consistently across the Copyrighted Photographs—that produces a unified and immediately recognizable visual expression that is original to EVOX and protected under 17 U.S.C. § 103(a). A side-by-side comparison of specific registered Copyrighted Photographs identified in Exhibits B and C with the corresponding AI-generated outputs from each Defendant's AI image generating tools demonstrates that Defendants' outputs replicate this same original combination, selection, coordination, and arrangement of EVOX's protectable expression across multiple vehicle makes, models, and body styles.

79.   By way of specific example, EVOX's registered Copyrighted Photograph of a 2021 Ford Explorer (identified by title and copyright registration number in Exhibit B) is substantially similar in its protected expression to the AI-generated images of a 2021 Ford Explorer produced by each of the Stability Entities', Runway's, and DeviantArt's respective AI image generating tools. The substantial similarity between the specific Copyrighted Photograph and each Defendant's AI-generated output lies not in the unprotected subject matter of the vehicle itself, but in the protectable selection, coordination, and arrangement of EVOX's creative elements, including the specific camera angle and height at the top of the wheel wells, the precise degree of vehicle rotation, the use of a white cyclorama background with gray-wall reflections simulating a horizon line, the positioning and color temperature of overhead lighting, the creation of soft-edge drop shadows beneath the vehicle, and the absence of reflections on the windshield and side windows to allow the vehicle's interior to stand out. Under the Ninth Circuit's extrinsic test, the objective similarities between the Copyrighted Photograph and each Defendant's AI-generated output extend to each of these individually protectable elements and their particular combination, selection, and arrangement. Under the Ninth Circuit's intrinsic test, an ordinary reasonable observer, comparing the Copyrighted Photograph to each Defendant's AI-generated

image side by side, would recognize that the AI outputs appropriate the total concept and feel of the specific Copyrighted Photograph, reproducing the expression of EVOX's distinctive selections that result from EVOX's unique combination of creative choices.

| EVOX photograph of a 2021 Ford Explorer |
| :---: |
| |

| Stability | Runway | DeviantArt |
| :---: | :---: | :---: |
| | | |

COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

CROWELL
& MORING LLP
ATTORNEYS AT LAW

80.     Below are more examples of EVOX's Copyrighted Photographs in comparison to the Defendants' AI generated images:

| EVOX photograph of a 2021 Audi Sportback Premium | | |
|---|---|---|
|  | | |
| **Stability** | **Runway** | **DeviantArt** |

CROWELL & MORING LLP
ATTORNEYS AT LAW

COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

| EVOX photograph of a 2021 Lexus UX 200 |
|---|
|  |

©EVOX IMAGES

| Stability | Runway | DeviantArt |
|---|---|---|
| | | |

COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

CROWELL
& MORING LLP
ATTORNEYS AT LAW

## EVOX photograph of a 2021 BMW Z4 Roadster



©EVOX IMAGES

| Stability | Runway | DeviantArt |
|---|---|---|

COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

CROWELL
& MORING LLP
ATTORNEYS AT LAW

| EVOX photograph of a 2021 Nissan Leaf S Plus |
|---|
|  |

| Stability | Runway | DeviantArt |
|---|---|---|

COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

CROWELL
& MORING LLP
ATTORNEYS AT LAW

| EVOX photograph of a 2021 Toyota Tacoma SR |
| --- |



©EVOX IMAGES

| Stability | Runway | DeviantArt |
| --- | --- | --- |

81. Again each of the AI-generated images produced by the Stability Entities', Runway's, and DeviantArt's respective AI image generating tools are substantially similar to the protectable selection, combination and arrangement of EVOX's creative elements in the original EVOX Copyrighted Photograph, including the specific camera angle and height at the top of the wheel wells, the precise degree of vehicle rotation, the use of a white cyclorama background with gray-wall reflections simulating a horizon line, the positioning and color temperature of overhead lighting, the creation of soft-edge drop shadows beneath

CROWELL
& MORING LLP
ATTORNEYS AT LAW

29    COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

the vehicle, and the absence of reflections on the windshield and side windows to allow the vehicle's interior to stand out. An ordinary reasonable observer, comparing the Copyrighted Photograph to each Defendant's AI-generated image side by side, would recognize that the AI outputs appropriate the total concept and feel of the specific Copyrighted Photograph, reproducing the expression of EVOX's distinctive selections that result from EVOX's unique combination of creative choices.

82.     Defendants' unauthorized copying of Copyrighted Photographs to train their AI image generation models undermines EVOX's ability to license its Copyrighted Photographs to train other AI models and undermines EVOX's ability to license the Copyrighted Photographs for conventional automotive photography uses.

83.     For example, the AI models offered by the Stability Entities, Runway, and DeviantArt allow third party users to reproduce EVOX's Copyrighted Photographs, or in the alternative unauthorized derivative works of Copyrighted Photographs, for pennies on the dollar versus the cost to license the Copyrighted Photographs from EVOX directly.

84.     On information and belief, the Stability Entities, Runway, and DeviantArt have also licensed the use of their AI models to other companies that further sub-license their models to end users. For example, the Stability Entities and Runway have licensed their respective AI models to an unrelated company, "Phygital+", that in turn licenses the use of their products to third-party users as part of a suite of "30+ leading AI models."[16]

85.     Hugging Face's reproduction, display, and distribution of the "Stanford Cars" data set, including 225 Copyrighted Photographs, further undermines EVOX's ability to license the Copyrighted Photographs to train other

_____

[16] https://phygital.plus/

AI models, as the Stanford Cars dataset is available for public download on Hugging Face's website for free. AI developers have no incentive to license the Copyrighted Photographs from EVOX to train their respective AI models when they can download them for free on Hugging Face.

86.     Each of the Stability Entities, Runway, and DeviantArt have commercialized their image generating AI models, including through the release of additional AI image generating models that require paid subscription services, and this commercialization directly competes with EVOX's own visual asset licensing business for a small fraction of the price. A user of these image-generating AI models can recreate EVOX's Copyrighted Photographs for less than a dollar per image or recreate potentially unlimited numbers of images for a small monthly fee that is less than the cost to license one Copyrighted Photograph directly from EVOX. The unauthorized reproduction, display, and distribution of the Copyrighted Photographs and/or substantially similar images, or in the alternative unauthorized derivative works, by these AI image generators displaces or substitutes purchases of Copyrighted Photographs and dilutes the market for Copyrighted Photographs.

87.     The unauthorized reproduction and distribution of Copyrighted Photographs by Defendants' AI image generating models poses an existential threat to EVOX's business because they can reproduce the Copyrighted Photographs (or unauthorized derivative images) without licensing the use of the Copyrighted Photographs from EVOX. This harm is increased exponentially through the distribution of Defendants' products to third party users. Indeed, a sister court recently recognized the exact harm posed by this type of widespread infringement: "an AI model that can generate high-quality images at will might be expected to greatly affect the market for such images, diminishing the incentive for humans to create them." *See*, *e.g.*, *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1053 (N.D. Cal. 2025). This is the exact harm that Defendants have caused to EVOX through the unauthorized reproduction, display, and distribution of the Copyrighted

Photographs and/or unauthorized derivative works.

88. Defendants' unlawful and unauthorized reproduction, distribution, and display of the Copyrighted Photographs have irreparably harmed EVOX's copyrights and exclusive rights in the Copyrighted Photographs. EVOX is without an adequate remedy at law with respect to such harm and injury.

## COUNT ONE

**(Direct Copyright Infringement – Unauthorized AI Training; Violation of the Reproduction, 17 U.S.C. §§ 106(1), 501 et seq. ; Against the Stability Entities, Runway, and DeviantArt )**

89. Paragraphs 1 through 88 are incorporated by reference in support of this claim for relief.

90. Each of the Copyrighted Photographs is an original pictorial work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

91. EVOX owns valid copyrights for each of the 103,957 Copyrighted Photographs at issue. *See* Exhibits A-D.

92. Defendants were not, and are not, authorized to reproduce, distribute, display, or otherwise use the Copyrighted Photographs.

93. Each of the Stability Entities, Runway, and DeviantArt have infringed EVOX's copyrights in the Copyrighted Photographs by violating EVOX's exclusive right of reproduction under 17 U.S.C. § 106(1) by downloading, copying, encoding, and storing over 100,000 images from the EVOX library to train their respective AI image generating models.

94. On information and belief, each of the Stability Entities currently distribute a range of AI image generating models to the public that were built from Stable Diffusion, including "Stable Diffusion 3.5", "Stable Diffusion XL", and "Stable Diffusion XL Turbo."[17]

_____

[17] https://stability.ai/stable-image.

95. On information and belief, Runway also currently distributes a range of AI image generating models to the public that were built from Stable Diffusion, through its suite of products, including "Runway Gen-4."

96. DeviantArt, an online community for artists to post and create artwork, offers a subscription-based AI image generation service called "DreamUp" that was built from the Stable Diffusion model that was trained on Copyrighted Photographs.

97. On information and belief, the training process for each AI image generating model involved multiple acts of reproduction of the Copyrighted Photographs including downloading, encoding, storing, and training the AI models at issue, each of which constitutes a separate act of reproduction under 17 U.S.C. § 106 *et seq*.

98. On information and belief, the infringement of the Copyrighted Photographs by the Stability Entities, Runway, and DeviantArt was willful. Each Defendant was aware that it did not have authorization to use the Copyrighted Photographs in the LAION datasets to train Stable Diffusion or their AI image generation models. The Copyrighted Photographs were improperly reproduced after being downloaded from third-party websites in violation of EVOX's licensing agreements, and the websites' respective terms and conditions. Moreover, the Copyrighted Photographs bore the "©EVOX IMAGES" mark on the face of the image and/or contained additional CMI embedded in the images metadata alerting Defendants that the Copyrighted Photographs belonged to EVOX. At a minimum, Defendants' actions in training these AI image generating models on the Copyrighted Photographs was reckless by using links to images crawled from the internet without regard to the rights of copyright holders. Moreover, they did not even attempt to obtain authorization for the use of these photographs during the training of Stable Diffusion and other AI generating models alleged herein.

99. EVOX has been damaged by the willful infringement of the Copyrighted Photographs in a sum to be determined.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

33   COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

100.   On information and belief, the Stability Entities, Runway, and DeviantArt will continue their infringing activities unless restrained and enjoined. EVOX's remedy at law is not by itself adequate to compensate it for the harm inflicted and threatened by the Stability Entities, Runway, and DeviantArt's continued use of the Copyrighted Photographs.

## COUNT TWO

**(Direct Copyright Infringement – Unauthorized AI Generated Images;**

**Violation of the Reproduction, Derivative Work, Distribution, and Public**

**Display Rights,    17 U.S.C. §§ 106(1)–(3), (5), 501 et seq.; Against the Stability**

**Entities, Runway, and DeviantArt)**

101.   Paragraphs 1 through 100 are incorporated by reference in support of this claim for relief.

102.   Each of the Copyrighted Photographs is an original pictorial work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

103.   EVOX owns valid copyrights for each of the 103,957 Copyrighted Photographs at issue. *See* Exhibits A-D.

104.   Defendants were not, and are not, authorized to reproduce, distribute, display, or otherwise use the Copyrighted Photographs.

105.   The Stability Entities, Runway, and DeviantArt have infringed EVOX's exclusive rights under the Copyright Act—including the right of reproduction (17 U.S.C. § 106(1)), the right to prepare derivative works (17 U.S.C. § 106(2)), the right of distribution (17 U.S.C. § 106(3)), and the right of public display (17 U.S.C. § 106(5))—by generating, displaying, and distributing AI outputs that reproduce, or are unauthorized derivative works of, the Copyrighted Photographs through their respective AI image generating models after they improperly trained their AI image generating models on Copyrighted Photographs.

106.   The Stability Entities, Runway, and DeviantArt have reproduced, distributed and displayed AI generated images that are substantially similar to

EVOX's Copyrighted Photographs, or in the alternative created, displayed and distributed unauthorized derivative works of the Copyrighted Photographs as set forth above. These AI generated images imitate EVOX's distinctive creative techniques used to produce Copyrighted Photographs. These substantial similarities hold true for different vehicle models, including sedans, SUVs, trucks, coupes, and minivans across a range of manufacturers. In the alternative, the automobile images reproduced, distributed, and created by the Stability Entities, Runway, and DeviantArt are unauthorized derivative works of Copyrighted Photographs because they imitate EVOX's distinctive creative techniques used to produce the Copyrighted Photographs.

107.　Despite the existence of an almost infinite amount of possible rotational angles, camera heights, camera distances, and lighting configurations for automotive photography, each of the Stability Entities, Runway, and DeviantArt's AI tool consistently replicates EVOX's specific creative combinations, selection, and arrangement across every make and model it generates, rejecting the many available approaches that differ significantly from EVOX's style and instead reproducing the EVOX "look" and "feel" in a manner substantially the same as that used in the Copyrighted Photographs.

108.　On information and belief, each of the Stability Entities, Runway, and DeviantArt have reproduced, displayed, and distributed the Copyrighted Photographs without authorization, or in the alternative created unauthorized derivative works of the Copyrighted Photographs in response to prompts from the users of their respective AI image generating models.

109.　On information and belief, the infringement of the Copyrighted Photographs by the Stability Entities, Runway, and DeviantArt was willful. They were aware that they were not authorized to use the Copyrighted Photographs in the LAION-5B data set to train Stable Diffusion or their AI image generation models. The Copyrighted Photographs were improperly reproduced after being downloaded

from third-party websites in violation of EVOX's licensing agreements, and the websites' respective terms and conditions. Moreover, the Copyrighted Photographs bore the "©EVOX IMAGES" mark on the face of the image and/or contained additional CMI embedded in the images metadata alerting Defendants that the Copyrighted Photographs belonged to EVOX. Defendants were aware they were not authorized to reproduce, distribute, or create unauthorized copies of the Copyrighted Photographs through their respective AI image generating models. At a minimum, their actions in reproducing, distributing, or creating unauthorized copies, or in the alternative derivative works, of the Copyrighted Photographs were reckless by using links crawled from the internet without regard to the rights of copyright holders. Moreover, they did not even attempt to obtain authorization for the copying and reproduction of these photographs through their respective AI image generating models.

110. EVOX has been damaged by the willful infringement of the Copyrighted Photographs in a sum to be determined.

111. On information and belief, the Stability Entities, Runway, and DeviantArt will continue their infringing activities unless restrained and enjoined. EVOX's remedy at law is not by itself adequate to compensate it for the harm inflicted and threatened by the Stability Entities, Runway, and DeviantArt's continued use of the Copyrighted Photographs.

## COUNT THREE

**(Direct Copyright Infringement – Unauthorized Distribution; Violation of the Reproduction, Distribution, and Public Display Rights, 17 U.S.C. §§ 106(1), (3), (5), 501 *et seq.*; Against Hugging Face)**

112. Paragraphs 1 through 111 are incorporated by reference in support of this claim for relief.

113. Each of the Copyrighted Photographs is an original pictorial work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

CROWELL & MORING LLP
ATTORNEYS AT LAW

114. EVOX owns valid copyrights for each of the 103,957 Copyrighted Photographs at issue. *See* Exhibits A-D.

115. Hugging Face hosts datasets containing collections of photographs that can be used to train AI models and AI image generators. One such image dataset, the "Stanford Cars" dataset contains 8,144 images of automobiles for public download, including the 225 Copyrighted Photographs identified in Exhibit C.

116. Hugging Face violated EVOX's exclusive rights of reproduction (17 U.S.C. § 106(1)), public display (17 U.S.C. § 106(5)), and distribution (17 U.S.C. § 106(3)) by copying, hosting and displaying, and distributing 225 Copyrighted Photographs in the Stanford Cars dataset and made further reproductions of said content in order to effectuate its distribution to third parties.

117. On information and belief, Hugging Face distributed the Stanford Cars dataset (which includes 225 Copyrighted Photographs) over 5,000 times before Hugging Face registered a designated DMCA agent for the first time on April 17, 2025.

118. Hugging Face was not, and is not, authorized to reproduce, distribute, display, or otherwise use the Copyrighted Photographs.

119. On information and belief, the infringement of the Copyrighted Photographs by Hugging Face was willful. Hugging Face did not have authorization to display or distribute the Copyrighted Photographs in the Stanford Cars dataset. The Copyrighted Photographs were improperly reproduced after being downloaded from third-party websites in violation of EVOX's licensing agreements, and the websites' respective terms and conditions. Moreover, the Copyrighted Photographs bore the "©EVOX IMAGES" mark on the face of the image and/or contained additional CMI embedded in the images metadata alerting Hugging Face that the Copyrighted Photographs belonged to EVOX. On information and belief, Hugging Face also failed to register a DMCA agent with the U.S. Copyright Office until after the Copyrighted Photographs in the Stanford Cars

CROWELL
& MORING LLP
ATTORNEYS AT LAW

37    COMPLAINT FOR COPYRIGHT INFRINGEMENT
CASE NO: 2:26-cv-7201

dataset had been distributed over 5,000 times. At a minimum, these actions were reckless because Hugging Face distributed images without regard to the rights of copyright holders. Moreover, Hugging Face did not even attempt to obtain authorization for the display and distribution of these photographs or designate an agent to receive notification of the ongoing infringement.

120. EVOX has been damaged by the willful infringement of the Copyrighted Photographs in a sum to be determined.

121. On information and belief, Hugging Face will continue its infringing activities unless restrained and enjoined. EVOX's remedy at law is not by itself adequate to compensate it for the harm inflicted and threatened by Hugging Face's continued use of the Copyrighted Photographs.

## COUNT FOUR

**(Contributory Copyright Infringement – Against All Defendants 17 U.S.C. §501 *et seq.*)**

122. Paragraphs 1 through 121 are incorporated by reference in support of this claim for relief.

123. Each of the Copyrighted Photographs is an original pictorial work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

124. EVOX owns valid copyrights for each of the 103,957 Copyrighted Photographs at issue. *See* Exhibits A-D.

125. The Stability Entities, Runway, and DeviantArt distribute their AI image generator models which allow anyone to download, use, and deploy these AI image generators for free on various websites, including Hugging Face.

126. On information and belief, third-party users have in fact used the Stability Entities, Runway and DeviantArt's AI image generators to reproduce, or to create works substantially similar to, or unauthorized derivative works of, EVOX's Copyrighted Photographs, constituting direct infringement to which Defendants knowingly and materially contributed. The Stability Entities, Runway,

and DeviantArt's respective AI image generators are capable of, and were distributed for the purpose of, producing infringing reproductions and unauthorized derivative works of EVOX's Copyrighted Photographs because they were trained on the LAION-5B dataset, and therefore downloaded, copied, and used at least 103,957 Copyrighted Photographs from the included links.

127. The Stability Entities, Runway, and DeviantArt have made material contributions and induced others to participate in this infringing activity by creating their respective AI image generators and then distributing them for free to the public.

128. Stable Diffusion was developed through a collaboration between the Stability Entities, Runway, and researchers at Ludwig Maximilian University in Munich, Germany. On information and belief, Stable Diffusion was created by taking 100,000 gigabytes of images from the LAION datasets and was intended to "recreate" and provide "iterations" of those same images.

129. Each of the Defendants knew that the Copyrighted Photographs in the LAION datasets were copyrighted by EVOX because the images were marked as "©EVOX IMAGES" and contained CMI. For example, the LAION-5B dataset included a "score" for each URL that indicated the likelihood that a particular image contained a watermark or other distinctive mark signaling the presence of CMI. Stability Entities, Runway, and DeviantArt could have used this score to train Stable Diffusion and their respective AI image generating models on images that did not include CMI, but chose not to.

130. By distributing Stable Diffusion and their own AI image generators to the public with the ability to recreate copyrighted training images, the Stability Entities, Runway and DeviantArt made material contributions and/or induced additional infringement by third party users of these AI image generating models.

131. In addition to the material contributions described above, the Stability Entities, Runway, and DeviantArt distributed their AI image generators with the

object of promoting their use to infringe the Copyrighted Photographs, as evidenced by clear expression and other affirmative steps taken to foster infringement. Among other things, the Stability Entities' then CEO Emad Mostaque publicly described Stable Diffusion as having compressed 100,000 gigabytes of images into a model that could "recreate any of those and iterations of those [images]," thereby communicating to the public that the purpose of the AI image generators was to reproduce copyrighted training images, including the Copyrighted Photographs. The Stability Entities, Runway, and DeviantArt further demonstrated their unlawful objective by failing to adopt any available filtering, content-control, or licensing measures to prevent the reproduction, display, or distribution of the Copyrighted Photographs through their AI image generators, despite the technical feasibility of such measures. Moreover, the Stability Entities, Runway, and DeviantArt released their AI image generators to the public free of charge, maximizing the scope and scale of third-party infringement of the Copyrighted Photographs. These affirmative acts, taken together, demonstrate that the Stability Entities, Runway, and DeviantArt acted with the intent to induce and cause third-party users of their AI image generators to directly infringe the Copyrighted Photographs, and such inducement did in fact cause widespread direct infringement by third-party users who reproduced, displayed, and distributed the Copyrighted Photographs, or in the alternative unauthorized derivative works thereof, through the use of Defendants' AI image generators.

132.   Hugging Face has made material contributions and induced others to participate in this infringing activity by hosting Stable Diffusion and other AI image generators trained on Copyrighted Photographs and distributing them for free to the public. Hugging Face posted on X that it was "looking forward to the full public release of Stable Diffusion in the coming days!" Hugging Face also boasts on its website that it is an "AI platform for open [Machine Learning] ML. It hosts over 2M models, 1.5M datasets, and 1.5M AI apps (Spaces), all open and publicly

available." Hugging Face has also made material contributions and/or induced additional infringing activity by displaying and distributing the Stanford Cars dataset, containing 225 Copyrighted Photographs, to further train other AI models on the Copyrighted Photographs contained therein.

133. Defendants intend to cause further infringement by promoting and distributing their respective AI image generating models, including but not limited to: Stable Diffusion, Stable Diffusion XL, Stable Diffusion XL Turbo, Runway Gen-4, and DreamUp, and the Stanford Cars dataset to the public for free.

134. On information and belief, the contributory infringement of the Copyrighted Photographs by Defendants was willful. The Stability Entities, Runway, and DeviantArt were aware that they did not have authorization to use the Copyrighted Photographs in the LAION-5B data set to train Stable Diffusion or other AI image generation models and they were aware they were not authorized to allow third party users of their AI image generating models to reproduce, distribute, or display unauthorized copies of the Copyrighted Photographs, or in the alternative unauthorized derivative works. At a minimum, their actions in contributing to or inducing third party users to further reproduce, display, distribute, or create unauthorized copies, or in the alternative derivative works, of the Copyrighted Photographs was reckless by using links crawled from the Internet without regard to the rights of copyright holders. The Stability Entities, Runway, and DeviantArt were aware that they were not authorized to use the Copyrighted Photographs in the LAION datasets to train Stable Diffusion or their other AI image generation models. The Copyrighted Photographs were improperly reproduced after being downloaded from third-party websites in violation of EVOX's licensing agreements, and the websites' respective terms and conditions. Moreover, the Copyrighted Photographs bore the "©EVOX IMAGES" mark on the face of the image and/or contained additional CMI embedded in the images metadata alerting Defendants that the Copyrighted Photographs belonged to EVOX. The Stability

Entities, Runway, and DeviantArt did not even attempt to obtain authorization for the reproduction, display, and distribution of these photographs or unauthorized derivative works through their respective AI image generating models.

135. On information and belief, the contributory infringement of the Copyrighted Photographs by Hugging Face was also willful. Hugging Face did not have authorization to display or distribute the Copyrighted Photographs in the Stanford Cars dataset. On information and belief, Hugging Face also failed to register a DMCA agent with the U.S. Copyright Office until after the Copyrighted Photographs in the Stanford Cars dataset had been distributed over 5,000 times. Hugging Face has made material contributions and induced others to participate in this infringing activity by hosting Stable Diffusion and other AI image generators trained on the Copyrighted Photographs and distributing them for free to the public. Hugging Face has also made material contributions to infringing activity by displaying and distributing the Stanford Cars dataset, containing 225 Copyrighted Photographs, to allow third parties to further train other AI models on the Copyrighted Photographs contained therein. At a minimum, these actions were reckless because Hugging Face did not even attempt to obtain authorization for the reproduction, display and distribution of these photographs or designate an agent to receive notifications regarding the infringement.

136. EVOX has been damaged by the willful infringement of the Copyrighted Photographs in a sum to be determined.

137. On information and belief, Defendants will continue their infringing activities unless restrained and enjoined. EVOX's remedy at law is not by itself adequate to compensate it for the harm inflicted and threatened by the continued use of the Copyrighted Photographs.

## COUNT FIVE

### (Violation of the Digital Millennium Copyright Act 17 U.S.C. §§ 1201-1205 et seq. Against All Defendants)

138.　Paragraphs 1 through 137 are incorporated by reference in support of this claim for relief.

139.　EVOX owns the copyrights to the Copyrighted Photographs in the LAION datasets that were used to train Stable Diffusion and Defendants' AI image generating products built from Stable Diffusion.

140.　EVOX included the following Copyright Management Information ("CMI") for the Copyrighted Photographs:

　　　　a.　EVOX's "©EVOX IMAGES" mark on the lower righthand corner of each and every Copyrighted Photograph; and/or

　　　　b.　Metadata embedded into the Copyrighted Photographs containing the title, copyright ownership and other technical specifications regarding the Copyrighted Photographs.

141.　On information and belief, the development of Stable Diffusion by the Stability Entities and Runway, and the development of each Defendant's AI models built from Stable Diffusion, required these Defendants to create multiple unauthorized copies of each of the Copyrighted Photographs from the LAION-5B dataset. First, the images were downloaded from the URLs in the LAION-5B dataset creating an unauthorized reproduction of the Copyrighted Photograph. Then copies of the images were "displayed" to the model during the training of the AI model. Copies of the Copyrighted Photographs were used to measure the model's performance by comparing the training images to the outputs from the model. Finally, Defendants' AI image generators reproduce virtually identical copies of the Copyrighted Photographs without any of EVOX's CMI. Each of these unauthorized reproductions, distributions, and displays of a Copyrighted Photograph is a violation of protected copyrights under 17 U.S.C. § 106.

142. When the Copyrighted Photographs were improperly downloaded from the URLs in the LAION datasets, the Copyrighted Photographs contained EVOX's CMI described above. However, the unauthorized reproductions of the Copyrighted Photographs, or unauthorized derivative works, reproduced, displayed, and distributed by the Stability Entities, Runway, and DeviantArt's AI image generating models do not contain EVOX's CMI. The outputs from the Stability Entities, Runway, and DeviantArt's AI image generating models are not marked with "©EVOX IMAGES" or embedded with EVOX's CMI metadata. Thus, on information and belief, at some point during the training of Stable Diffusion and Defendants' other AI image generating models, the Stability Entities, Runway and DeviantArt removed and or altered the CMI in the Copyrighted Photographs used for AI training. In addition, the Copyrighted Photographs were downloaded and stored as identical digital copies during the training process, and the CMI present in those identical copies—including the "©EVOX IMAGES" mark and embedded metadata—was removed or altered by Defendants without authorization before, during, or after the training of their AI models.

143. Stability Entities, Runway, and DeviantArt knew the Copyrighted Photographs in the LAION datasets contained EVOX's CMI. For example, the LAION-5B dataset included a "score" for each URL that indicated the likelihood that a particular image contained a watermark or other distinctive mark signaling the presence of CMI. Stability Entities, Runway, and DeviantArt could have used this score to train Stable Diffusion and their respective AI image generating models on images that did not include CMI, but chose not to.

144. Similarly, the Copyrighted Photographs reproduced, displayed and distributed by Hugging Face in the "Stanford Cars" dataset also contained EVOX's CMI. However, EVOX's CMI has been altered and/or removed from the 225 Copyrighted Photographs in the "Stanford Cars" dataset that has been reproduced, displayed, and distributed by Hugging Face. As just one example, the file name for

the Copyrighted Photographs in the "Stanford Cars" dataset has been changed from EVOX's file naming convention to a new file name.

145.   Defendants did not have authority to remove or alter the CMI from the Copyrighted Photographs used during AI training or to remove or alter the CMI from the copies of the Copyrighted Photographs produced by their respective AI image generating models within the meaning of the DMCA.

146.   On information and belief, Defendants' removal of EVOX's CMI from the Copyrighted Photographs was intentional. The Stability Entities, Runway, and DeviantArt removed or altered the CMI during the training process and designed Stable Diffusion and their other AI image generating models to omit any CMI as part of the output from their AI models. On information and belief, the unauthorized removal of EVOX's CMI from the Copyrighted Photographs in the "Stanford Cars" dataset was also intentional because the Copyrighted Photographs were systematically renamed with a different file name—not EVOX's original file name.

147.   Stability Entities, Runway, and DeviantArt knew that the unauthorized removal or alteration of EVOX's CMI from the Copyrighted Photographs would induce, enable, facilitate or conceal the unauthorized reproduction, distribution, and display of the Copyrighted Photographs during AI training and in the production of AI outputs. The removal or alteration of EVOX's CMI concealed the fact that EVOX's Copyrighted Photographs were being used in the AI training process, and facilitated the effective training of the models on further iterative copies. Such removal and alteration also made it difficult or impossible for third party users of Stable Diffusion or their other AI image generating models to know that reproduction, display, and distribution of the Copyrighted Photographs, or unauthorized derivative works, violated EVOX's copyrights.

148.   Similarly, Hugging Face knew or should have known that the removal of EVOX's CMI from the Copyrighted Photographs reproduced, displayed and

distributed by Hugging Face as part of the "Stanford Cars" dataset induced, enabled, facilitated, or concealed infringement because the Copyrighted Photographs were available to download for free by third party users. Moreover, the removal or alteration of EVOX's CMI also has made it more difficult for third-party users to know that the images are Copyrighted Photographs.

149.   With respect to the Stanford Cars dataset hosted and distributed by Hugging Face, the 225 Copyrighted Photographs contained therein are reproduced and distributed as exact, identical copies of EVOX's original images. EVOX's copyright management information—including the "©EVOX IMAGES" mark displayed on the face of the images and/or the metadata embedded in the images identifying EVOX as the copyright owner, as well as EVOX's original file names—was intentionally removed or altered from these identical copies of the Copyrighted Photographs. The removal or alteration of EVOX's CMI from identical copies of the Copyrighted Photographs satisfies any requirement under 17 U.S.C. § 1202(b) that the CMI be removed or altered from a copy of the copyrighted work.

150.   Each Defendant knew, or had reasonable grounds to know, that removing or altering EVOX's CMI from the Copyrighted Photographs would induce, enable, facilitate, or conceal infringement of EVOX's copyrights, thereby satisfying the double-scienter requirement of 17 U.S.C. § 1202(b). Specifically, each Defendant (a) knew or should have known that the Copyrighted Photographs were protected by copyright and bore CMI identifying EVOX as the copyright owner, and (b) knew or had reasonable grounds to know that the removal or alteration of such CMI would induce, enable, facilitate, or conceal the infringement of EVOX's copyrights by making it more difficult for downstream users and the public to identify EVOX as the copyright owner and to recognize that the use of the Copyrighted Photographs was unauthorized.

151.   EVOX has been injured by the unauthorized removal or alteration of

EVOX's CMI. EVOX is entitled to statutory damages, actual damages, restitution of profits and/or other remedies as provided by law.

## **PRAYER FOR RELIEF**

WHEREAS, EVOX prays for relief as follows:

A.     For an entry of permanent injunctive relief enjoining and restraining Defendants and their officers, directors, agents, servants, employees, licensees and all other persons in privity or acting in concert with them from (1) the unauthorized reproduction, distribution, or display, of the Copyrighted Photographs to train their respective AI models; and/or (2) the unauthorized reproduction, distribution, or display of the Copyrighted Photographs, or in the alternative unauthorized derivative works, through AI outputs from Defendants' respective AI models;

B.     For an award, at EVOX's election, pursuant to 17 U.S.C. §504, of either (1) the actual damages suffered by EVOX with respect to past infringement, plus any additional profits of Defendants that are attributable to the infringement that are not taken into account in computing EVOX's actual damages; or (2) statutory damages as provided by Section 504 (c);

C.     For a finding that the infringement by Defendants was willful, and for an award to EVOX, at its election, of statutory damages against Defendants for willfully committing infringement as provided by 17 U.S.C. §504;

D.     For an award of EVOX's attorneys' fees, expenses and costs, pursuant to 17 U.S.C. §505;

E.     For an award to EVOX of pre-and post-judgment interest;

F.     For an award to EVOX of such other and further relief as the Court deems just and proper.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

Dated: July 2, 2026

CROWELL & MORING LLP

By:  /s/ Kent B. Goss
     Kent B. Goss
     Valerie M. Goo
     Raija Horstman
     Kenneth R. Taketa
     Ahnna L. Chu

     Attorneys for Plaintiff
     EVOX Productions, LLC

## **DEMAND FOR JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff EVOX demands a trial by jury on all issues triable by jury.

Dated: July 2, 2026                    CROWELL & MORING LLP

By:  */s/ Kent B. Goss*
Kent B. Goss
Valerie M. Goo
Raija Horstman
Kenneth R. Taketa
Ahnna L. Chu

Attorneys for Plaintiff
EVOX Productions, LLC