**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Shon Morgan (SBN 187736)
shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew H. Schapiro, *pro hac vice*
andrewschapiro@quinnemanuel.com
191 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Kevin P.B. Johnson (SBN 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendants Stability AI, Inc., Stability AI Ltd., and Stability AI US Services Corporation*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EVOX PRODUCTIONS, LLC, a Delaware limited liability company,

Plaintiff,

vs.

STABILITY AI, INC., a Delaware corporation; STABILITY AI LTD., a UK corporation; STABILITY AI US SERVICES CORPORATION, a Delaware corporation; RUNWAY AI, INC., a Delaware corporation;

Case No. 2:26-cv-7201-CAS-RAO

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS STABILITY AI, INC., STABILITY AI LTD., AND STABILITY AI US SERVICES**

| | |
|---|---|
| HUGGING FACE, INC., a Delaware corporation; DEVIANTART, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CORPORATION'S MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date: January 11, 2027<br>Time: 10:00 a.m.<br>Judge: Hon. Christina A. Snyder |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

LEGAL STANDARD ........ 3

ARGUMENT ........ 4

I. EVOX FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT BASED ON TRAINING STABLE DIFFUSION ........ 4

A. Stability's Training Of Generative AI Was Fair Use ........ 4

B. EVOX'S Training Claim Is Barred By The Statute Of Limitations ........ 7

II. EVOX FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT BASED ON STABLE DIFFUSION'S OUTPUTS ........ 8

A. EVOX's Alleged Photographic "Look" Is Not Copyrightable Expression ........ 10

(1) EVOX cannot aggregate unprotectable elements across thousands of photographs and call the result a protectable "look" ........ 11

(2) EVOX's derivative-work theory fails because imitating a technique is not incorporating a copyrighted work ........ 12

B. EVOX's Own Selected Stability Outputs Do Not Copy Protectable Expression From The EVOX Photographs ........ 12

C. EVOX Independently Fails To Allege Volitional Conduct By Stability Causing The User-Generated Outputs ........ 17

III. EVOX FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT ........ 18

A. EVOX Does Not Adequately Plead Predicate User Infringement Of The Asserted Works ........ 18

B. *Cox Communications* Forecloses Liability Based On Stability's Mere Distribution Of Technology Capable Of Infringing Use ........ 19

(1) EVOX does not plead affirmative inducement by Stability ....... 19

(2) EVOX cannot plausibly allege that Stable Diffusion is tailored to infringement ....... 19

IV. EVOX FAILS TO STATE A DMCA CLAIM ....... 20

A. Input Theory: Absence Of EVOX CMI In A Generated Image Does Not Establish Removal Of CMI During Training ....... 20

B. Output Theory: *Doe 1 v. GitHub, Inc.* Forecloses EVOX's Theory That Absence Of CMI In A Generated Image Shows A Violation Of Section 1202(b) ....... 21

C. EVOX Fails To Allege The Scienter Required By Section 1202(b) ....... 21

(1) Section 1202(b)(1): EVOX does not plausibly allege Stability intentionally removed CMI ....... 22

(2) Section 1202(b)(3): EVOX does not plausibly allege Stability distributed works ....... 22

(3) Sections 1202(b)(1),(3): EVOX fails to allege Stability knew or had reasonable grounds to know the alleged removal of CMI would "induce, enable, facilitate, or conceal an infringement of any" copyright ....... 22

D. EVOX Lacks Standing To Bring A DMCA Claim ....... 23

V. EVOX FAILS TO STATE CLAIMS AGAINST STABILITY AI US SERVICES CORPORATION AND STABILITY AI, INC. ....... 23

A. EVOX Does Not Allege Actionable Conduct By Stability AI US Services Corporation And Stability AI, Inc. ....... 24

B. EVOX's Alter Ego Allegations Do Not Supply The Missing Conduct ....... 24

# TABLE OF AUTHORITIES

## Cases

*Andersen v. Stability AI Ltd.*, No. 3:23-cv-00201 (N.D. Cal. filed Jan. 13, 2023) .......... 8

*Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994) .......... 9, 10, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007 (N.D. Cal. 2025) .......... 4, 5, 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 24

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .......... 4, 6

*Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-CV-03811, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) .......... 18, 19, 22

*Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. 583 (2026) .......... 2, 19

*Doe 1 v. GitHub,Inc.*, No. 24-7700, 2026 WL 2728464 (9th Cir. Sept. 16, 2026) .......... 3, 21, 23

*Eight Mile Style, LLC v. Meta Platforms, Inc.*, No. 2:25-cv-11618, 2026 WL 1735026 (E.D. Mich. June 16, 2026) .......... 18, 19

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) .......... 9, 10

*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003) .......... 10, 15, 16

*Evox Productions LLC v. Kayak Software Corporation*, No. CV15-5053, 2017 WL 5634856 (C.D. Cal. Jan. 20, 2017) .......... 12, 16

*Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927 (C.D. Cal. 2018) .......... 20

*Field v. Google Inc.*,
412 F. Supp. 2d 1106 (D. Nev. 2006) .......... 4

*Getty Images (US) Inc., et al., v. Stability AI Ltd.*,
No. IL-2023-000007 (EWHC (Ch) IP List filed Jan. 16, 2023) .......... 8

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 4

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021) .......... 5, 7

*Gray v. Perry*,
No. 2:15-CV-05642-CAS-JCX, 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020) .......... 9

*Harrington v. Pinterest, Inc.*,
No. 5:20-CV-05290, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) .......... 21, 22, 23

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .......... 25

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) .......... 7

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) .......... 5, 6, 7

*Lancaster v. Alphabet Inc.*,
No. 15-CV-05299, 2016 WL 3648608 (N.D. Cal. July 8, 2016) .......... 24

*Luvdarts, LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) .......... 19

*Marsh v. Tilley Steel Co.*,
26 Cal. 3d 486 (Cal. 1980) .......... 24

*Mattel, Inc. v. MGA Ent., Inc.*,
616 F.3d 904 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) .......... 10, 11

*Michael Grecco Prods., Inc. v. BDG Media Inc.*,
2019 WL 13128605 (C.D. Cal. Nov. 21, 2019) .......... 8

*Michael Grecco Prods., Inc. v. TikTok, Inc.*,
829 F. Supp. 3d 793 (C.D. Cal. 2025) .......... 4

*In re OpenAI, Inc. Copyright Infringement Litig.*,
No. 1:25-cv-03483 (S.D.N.Y. Sept. 1, 2026), Dkt. 316 .......... 5

*Oracle Int'l Corp. v. Rimini St., Inc.*,
123 F.4th 986 (9th Cir. 2024) .......... 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 4, 5, 6, 18

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .......... 17, 23

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 24, 25

*Raw Story Media, Inc. v. OpenAI, Inc.*,
756 F. Supp. 3d 1 (S.D.N.Y. 2024), *reconsideration denied sub nom. In re OpenAI, Inc., Copyright Infringement Litig.*, No. 24-CV-01514, 2025 WL 1707564 (S.D.N.Y. June 18, 2025) .......... 23

*Reece v. Island Treasures Art Gallery, Inc.*,
468 F. Supp. 2d 1197 (D. Haw. 2006) .......... 10

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .......... 9, 11, 12, 15

*Roley v. New World Pictures, Ltd.*,
19 F.3d 479 (9th Cir. 1994) .......... 7

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) .......... 10, 11

*Sedlik v. Von Drachenberg*,
No. 24-3367 (9th Cir.) .......... 9

*Sonora Diamond Corp. v. Superior Ct.*,
83 Cal. App. 4th 523 (2000) .......... 24

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) .................... 19

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................... 23

*Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) .................... 24

*Tarantino v. Gawker Media, LLC*, No. CV 14-603, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) .................... 18

*The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18 (S.D.N.Y. 2025) .................... 22

*Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence, Inc.*, No. 25-2153, 2026 WL 2932557 (3d Cir. Sept. 29, 2026) .................... 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .................... 4

*United States v. Bestfoods*, 524 U.S. 51 (1998) .................... 24

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019) .................... 17, 23

*Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060 (C.D. Cal. 2002) .................... 25

*White v. W. Publ'g Corp.*, 29 F. Supp. 3d 396 (S.D.N.Y. 2014) .................... 6

*Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515 (9th Cir. 1983) .................... 7

*Woodland v. Hill*, 136 F.4th 1199 (9th Cir. 2025) .................... 9

## **Statutes**

17 U.S.C. § 107 .................... 4

17 U.S.C. § 411(a) .................... 15

17 U.S.C. § 507(b) .......... 7

17 U.S.C. § 1202(b) .......... 20, 21, 22

17 U.S.C. § 1202(c) .......... 20

Digital Millennium Copyright Act of 1998, Pub. L. No. 105-304, 112 Stat. 2860 (1998) .......... 2, 3, 20, 23

**Other Authorities**

Fed. R. Civ. P. 8(a) .......... 24

Fed. R. Civ. P. 12(b)(6) .......... 3

# PRELIMINARY STATEMENT

EVOX seeks to hold three separate Stability companies liable for infringement of 103,957 automotive photographs based on two activities: alleged use of photographs to train Stable Diffusion and users' later generation of images. But EVOX repeatedly collapses distinctions copyright law requires—between training and user-directed generation, individual works and a photographic "look," separate corporate entities, and omission of copyright information from a new image and removal from an existing one. Its claims fail as a result.

**The training claim alleges transformative, fair use and is untimely.** Count I alleges that photographs licensed to depict particular automobiles were among billions of images used to train a general-purpose generative AI model capable of creating new expression. That differs materially from using copyrighted material to build a competing product serving the same purpose, and the Complaint does not plausibly allege that Stability's training substitutes for EVOX photographs in their commercial markets.

**The claim is independently time-barred.** Stable Diffusion was publicly released in August 2022, and by October 2022 its development and the LAION datasets allegedly used to train it were public. Those datasets allegedly contained URLs bearing EVOX's name, and training necessarily preceded Stable Diffusion's release. EVOX nevertheless waited more than three years to sue. Its assertion that it could not discover the alleged copying until July 2023 cannot overcome facts establishing reason to investigate earlier.

**The output claim seeks protection for a "look," not protectable expression.** Count II defines EVOX's asserted "look" principally by camera angle, vehicle positioning, white backgrounds, lighting, shadows, and reflections. Copyright protects particular expression, not photographic techniques and conventions, and aggregating those elements across thousands of works does not make them protectable.

EVOX's selected comparisons fare no better. Their similarities lie predominantly in conventions of commercial automotive photography, while the generated images differ in their dominant subjects—the vehicles' proportions, grilles, headlights, bumper covers, wheels, contours, and other model-specific features. Some do not accurately depict the same vehicle design as the EVOX photograph. Filtering out unprotectable conventions leaves no plausible copying of protectable expression, and calling the outputs derivative works based on imitation of EVOX's "creative techniques" changes nothing.

**Users—not Stability—generate the challenged outputs.** Count II also fails because EVOX alleges the outputs were generated "in response to prompts from . . . users." (Complaint ¶ 108.) Stability's development or training of Stable Diffusion cannot supply the required volitional act when a user later prompts the model.

**The contributory infringement claim lacks both infringement and intent.** Count IV identifies no particular user who infringed any particular EVOX work. And *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. 583 (2026), requires intent to foster infringement. EVOX alleges neither affirmative encouragement to infringe its photographs nor technology tailored to infringement, but rather general-purpose image-generation technology with extensive non-infringing uses.

**The Digital Millennium Copyright Act, 17 U.S.C. § 1202 ("DMCA"), claim fails for lack of Article III standing.** A statutory violation alone does not establish concrete injury. EVOX does not allege any challenged output contains an EVOX photograph or copy of one; indeed, its theory is that newly generated images merely resemble EVOX photographs while omitting EVOX's copyright management information ("CMI"). That does not allege a concrete injury from the asserted CMI violation sufficient to support damages. Nor does EVOX allege any imminent threat that future outputs will contain its works or copies of them sufficient to support injunctive relief.

**The DMCA claim confuses omission with removal.** The absence of EVOX CMI from a newly generated image does not establish its removal from an EVOX photograph during training, and *Doe 1 v. GitHub,Inc.*, No. 24-7700, 2026 WL 2728464 (9th Cir. Sept. 16, 2026) forecloses liability based on the mere fact that a generated work lacks CMI attached to a source work. EVOX also fails to plausibly allege the statute's knowledge and infringement-related scienter requirements.

**Collective pleading cannot create liability.** Defining three companies collectively as the "Stability Entities" cannot supply missing conduct. The Complaint alleges no specific actionable conduct by Stability AI US Services Corporation or Stability AI, Inc., and conclusory alter-ego allegations do not cure that defect. The claims against those entities should be dismissed.

## BACKGROUND

Stability is a global AI company that, among other things, helped develop and release a free, open-source AI image-generation model called Stable Diffusion in August 2022. (Complaint ¶¶ 54, 55, 68, 69.) According to the Complaint, Stable Diffusion was trained on data sets of image-caption pairs named LAION-5B and LAION-2B-en. (*Id.* ¶ 53.) These data sets are made up of URL links pointing to images hosted on third-party websites: the LAION-5B set includes links to 5.85 billion image-caption pairs and the LAION-2B-en set contains links to 2 billion English-language pairs. (*Id.* ¶¶ 38-40.) EVOX alleges that LAION-2B-en includes links to at least 103,957 vehicle photographs created by EVOX. (*Id.* ¶ 44.)

Stable Diffusion generates a new image in response to a user's text prompt. (*Id.* ¶ 54.) EVOX alleges on information and belief that Stability removed CMI from EVOX photographs during training. (*Id.* ¶ 52.)

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must plead facts stating a facially plausible claim; conclusory allegations, unwarranted deductions, and facts merely consistent with liability are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Court may consider materials incorporated into the Complaint and need not accept allegations they contradict. *Michael Grecco Prods., Inc. v. TikTok, Inc.*, 829 F. Supp. 3d 793, 798 (C.D. Cal. 2025).

To establish Article III standing, a plaintiff must show "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 430-31 (2021) (the party invoking jurisdiction bears the burden of showing it). Absent this showing, a federal court lacks jurisdiction to hear the case. *Id.* at 424. The mere existence of a statutory cause of action does not confer standing. *Id.* at 426-27.

## ARGUMENT

### I. EVOX FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT BASED ON TRAINING STABLE DIFFUSION

#### A. Stability's Training Of Generative AI Was Fair Use

EVOX alleges that Stability infringed its reproduction rights by downloading and reproducing EVOX photographs to train Stable Diffusion. (Complaint ¶¶ 89-100.) That alleged use is fair use as a matter of law.

Fair use is a legal question subject to underlying factual disputes. *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1018 (N.D. Cal. 2025) (so holding). Section 107 considers purpose and character of the use, nature of the work, amount used, and market effect, with the first and fourth factors most important. 17 U.S.C. § 107; *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1118 (D. Nev. 2006) (identifying the first and fourth factors as most important).

*Purpose and Character of the Use*

The first factor asks whether the use is "transformative"—whether it "adds something new, with a further purpose or different character." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (citation omitted). A use is transformative when the work is used "in a different context" to create something new. *Perfect 10, Inc. v.*

*Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (citation omitted) (Google's thumbnails provided "an entirely new use for the original" images).

Training Stable Diffusion puts EVOX's photographs—licensed to automotive dealers and websites—to an entirely different use: training a general-purpose image model. (Complaint ¶¶ 19, 53); *see Amazon.com*, 508 F.3d at 1165 (transformative use provides "an entirely new use for the original work"); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 28-32 (2021). *Bartz* accordingly called AI training "transformative—spectacularly so," 787 F. Supp. 3d at 1021, and *Kadrey v. Meta Platforms, Inc.* found "no serious question" that generative-model training was highly transformative, 788 F. Supp. 3d 1026, 1044 (N.D. Cal. 2025). The United States likewise describes AI training as "exceedingly transformative" because it builds an "intelligent, interactive model" rather than directly entertaining or educating the original audience. Statement of Interest of the United States at 10-11, *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-cv-03483 (S.D.N.Y. Sept. 1, 2026), Dkt. 316.

*Thomson Reuters Enterprise Centre GmbH v. ROSS Intelligence, Inc*. is consistent. No. 25-2153, 2026 WL 2932557 (3d Cir. Sept. 29, 2026). ROSS used Westlaw headnotes to train a legal-research product serving essentially the same purpose as Westlaw, so the use was "minimally transformative, at best." *Id.* at *6-7. The court expressly distinguished generative-AI training: "[t]he concerns raised in that separate case do not apply here." *Id.* at *6 n.7. Unlike the case in *ROSS*, EVOX alleges its photographs were training inputs for a general-purpose model capable of new expression. This factor favors Stability.

*Nature of the Copyrighted Work*

EVOX's photographs are published, which weighs toward fair use. *Amazon.com*, 508 F.3d at 1167 (published works receive less protection under the second factor).

*The Amount and Substantiality of the Portion Used*

The third factor asks whether the amount copied was reasonable in relation to the transformative purpose. *Campbell*, 510 U.S. at 586-87 (tying permissible amount to the purpose of copying).

Copying an entire work may be reasonable when necessary to accomplish a transformative purpose. *See Bartz*, 787 F. Supp. 3d at 1030-31 (copying full novels was reasonably necessary because training required "billions of words"); *Kadrey*, 788 F. Supp. 3d at 1050 (same); *White v. W. Publ'g Corp.*, 29 F. Supp. 3d 396, 399 (S.D.N.Y. 2014) (copying entire works was necessary for text searchability); *Amazon.com*, 508 F.3d at 1167-68 (using entire images was necessary to generate thumbnails). Training Stable Diffusion required large volumes of images; using EVOX's photographs was reasonably necessary. This factor favors Stability.

*Effect of the Use on the Potential Market*

The fourth factor weighs against fair use when the challenged use displaces demand for copies the owner makes or readily could make. *Bartz*, 787 F. Supp. 3d at 1031 (framing market displacement inquiry). Neither market EVOX identifies establishes such displacement.

First, EVOX alleges harm to "conventional automotive photography uses" (Complaint ¶ 82), including licensing to dealers, automotive portals, rental-car companies, travel sites, and insurers (*id.* ¶ 28). But training and outputs do not supply those customers with EVOX photographs or substitutes. The outputs EVOX selected confirm that point: as Section II.B shows, they do not accurately depict the corresponding vehicles. A Ford dealer could not substitute Stability's generated rendition for EVOX's 2021 Ford Explorer photograph because prominent design features differ. (*See* Complaint ¶ 79.) EVOX thus does not plausibly allege displacement in its commercial markets.

Second, EVOX alleges that Stability's training undermines its ability to license photographs to train other AI models. (*Id.* ¶ 82.) But that defines a licensing market

around the challenged use itself. The Supreme Court has cautioned against that circularity: if loss of a fee for the asserted fair use established market harm, "it is a given in every fair use case that plaintiff suffers a loss of a potential market." *Google*, 593 U.S. at 38 (citation omitted) (emphasis omitted). Treating the absence of payment for the challenged training use as cognizable market harm would allow a copyright owner to control a transformative use merely by offering to license it.

*Kadrey* applies that principle directly to AI training, rejecting claimed harm to an AI-training licensing market because copyright owners were not "legally entitled to monopolize" that market. 788 F. Supp. 3d at 1052. EVOX likewise identifies no lost market for the photographs themselves attributable to training, only claimed compensation for allowing training. That does not weigh against fair use.

* * *

Taken together, the four factors establish fair use and require dismissal of Count I.

**B. EVOX'S Training Claim Is Barred By The Statute Of Limitations**

Copyright claims must be brought within three years after accrual. 17 U.S.C. § 507(b). In the Ninth Circuit, constructive knowledge triggers the limitations period. *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) (claims barred where plaintiff had actual or constructive knowledge more than three years before suit). A copyright owner with reason to suspect infringement must investigate and is charged with facts a reasonable investigation would reveal. *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983) (suspicion triggered duty to investigate).[1]

[1] A limitations defense can be resolved on a motion to dismiss where untimeliness appears on the face of the Complaint. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

The Complaint alleges EVOX could not discover defendants' reproduction and use until July 2023 (Complaint ¶ 74) but identifies nothing that occurred then—or after October 2022—that first made the alleged use discoverable. *See Michael Grecco Prods., Inc. v. BDG Media Inc.*, 2019 WL 13128605, at *4 (C.D. Cal. Nov. 21, 2019) (plaintiff bears burden to plead plausible facts supporting delayed discovery).

By August 2022, Stable Diffusion had been publicly released and Stability had disclosed its use of LAION training data. (Complaint ¶¶ 54, 57, 60, 69.) By October 2022, the LAION datasets were freely available. (*Id.* ¶¶ 37-40.) EVOX alleges they contained more than 100,000 links to its photographs, many in URLs bearing EVOX's name or file names. (*Id.* ¶¶ 44, 46-47.) Public information thus identified both the source of training data and a ready means to determine whether it included EVOX photographs. In any event, two highly publicized January 2023 suits against Stability supplied further notice. *See Andersen v. Stability AI Ltd.*, No. 3:23-cv-00201 (N.D. Cal. filed Jan. 13, 2023); *Getty Images (US) Inc., et al. v. Stability AI Ltd.*, No. IL-2023-000007 (EWHC (Ch) IP List filed Jan. 16, 2023) (in the United Kingdom).

Yet EVOX does not identify anything that first put it on notice in July 2023 or prompted its investigation then, much less explain why the same investigation could not reasonably have been undertaken based on the information publicly available by October 2022. Its unexplained assertion that it could not have discovered the alleged infringement until July 2023 therefore does not plausibly establish a July 2023 accrual date.

## II. EVOX FAILS TO STATE A CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT BASED ON STABLE DIFFUSION'S OUTPUTS

EVOX contends Stable Diffusion outputs infringe its reproduction, derivative-work, distribution, and display rights in all 103,957 asserted photographs. (Complaint ¶¶ 101-11.) The claim fails because the commonality EVOX identifies is photographic style, not protectable expression; its own selected comparisons do not

plausibly show substantial similarity in protectable expression; and it does not allege Stability's volitional conduct in generating user-directed outputs.

Copyright infringement requires copying enough protected expression to make the works "substantially similar." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). The Ninth Circuit applies an extrinsic test comparing objective similarities in protectable expression and an intrinsic reasonable-observer test. *Woodland v. Hill*, 136 F.4th 1199, 1210 (9th Cir. 2025). The extrinsic test may be decided as a matter of law, and failure at that stage is fatal. *Rentmeester*, 883 F.3d at 1118; *Woodland*, 136 F.4th at 1210; *see also Gray v. Perry*, No. 2:15-CV-05642-CAS-JCX, 2020 WL 1275221, at *3 (C.D. Cal. Mar. 16, 2020).[2]

The extrinsic test first requires identifying the source of alleged similarity. *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). The court then "distinguish[es] between the protected and unprotected material," *Woodland*, 136 F.4th at 1210 (citation omitted), and filters out unprotectable elements—including ideas, concepts, public-domain material, and *scènes à faire*—before comparing the remaining protectable expression. *Rentmeester*, 883 F.3d at 1118.

Photographs can be broken down into objective elements such as "subject matter, pose, lighting, camera angle, depth of field, and the like," none of which is protectable in isolation. *Id.* at 1119 (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d

[2] The Ninth Circuit is currently reconsidering en banc its framework for assessing substantial similarity. *Sedlik v. Von Drachenberg*, No. 24-3367 (9th Cir.). The court heard argument on September 29, 2026. Sedlik urged the Ninth Circuit to replace the existing two-step extrinsic-intrinsic framework with a single objective inquiry comparing the protectable expression in the works. Appellant's Petition for Rehearing En Banc at 3, *Sedlik v. Von Drachenberg*, No. 24-3367 (9th Cir. Feb. 17, 2026). If the Ninth Circuit adopts Sedlik's proposed framework, that approach likewise would permit resolution based on the objective comparison of protectable expression advanced here.

1068, 1074-75 (9th Cir. 2000)). Even an original combination of commonplace elements does not confer exclusive rights over the underlying elements or concept. *Satava v. Lowry*, 323 F.3d 805, 811-12 (9th Cir. 2003).

The doctrine of *scènes à faire* likewise excludes from protection features "indispensable and naturally associated with, or at least standard" in treating an idea. *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1206-07 (D. Haw. 2006) (citations omitted). That principle has particular force for a "commercial product shot," where only a "narrow range of artistic expression [is] available." *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765 (9th Cir. 2003).

After filtering, the court compares the remaining protectable elements to corresponding elements of the defendant's work. *Apple Comput.*, 35 F.3d at 1445. A plaintiff "may place *no* reliance upon any similarity in expression resulting from unprotectable elements." *Reece*, 468 F. Supp. 2d at 1204-05 (emphasis in original) (quoting *Apple Comput.*, 35 F.3d at 1446); *see Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (reliance on unprotectable similarities was significant error).

### A. EVOX's Alleged Photographic "Look" Is Not Copyrightable Expression

EVOX alleges Stable Diffusion reproduces a distinctive EVOX "look" and "feel" across automobile makes and models. (Complaint ¶¶ 76-78, 106-07.) But copyright protects EVOX's original expression in particular photographs, not the abstract idea of photographing a vehicle from a general perspective, controlling reflections through lighting, using a neutral studio background, or the aesthetic produced by those techniques. *Satava*, 323 F.3d at 813 (limiting protection to the artist's original contribution).

(1) <u>EVOX cannot aggregate unprotectable elements across thousands of photographs and call the result a protectable "look"</u>

EVOX does not contend any particular photograph was reproduced. Instead, it extracts recurring features from thousands of photographs, labels their combination the "EVOX look," and seeks control over that visual vocabulary. (Complaint ¶¶ 76-78, 106-07.) Copyright does not protect unprotectable design elements or their general "concept and feel." *Apple Comput.*, 35 F.3d at 1445-46. Nor may an artist monopolize standard elements belonging to the public. *Satava*, 323 F.3d at 807, 810-11 (denying exclusive rights in ideas and in elements that naturally follow from them). *Satava* illustrates the point: copyright did not protect "the idea of producing a glass-in-glass jellyfish sculpture or to elements of expression that naturally follow" from it. *Id.* at 810. Likewise, Mattel could not protect the idea of dolls resembling "young females" with "exaggerated features." *Mattel*, 616 F.3d at 915.

A large library of studio automotive photographs therefore does not confer ownership of the conventions used to create them. Copyright may protect original selection and arrangement in each finished photograph, not camera angle, studio background, controlled lighting, shadows, or reflection treatment as a style. *Satava*, 323 F.3d at 811 (protecting only original selection and arrangement of otherwise unprotectable elements).

It is irrelevant that defendants purportedly (but dubiously) had an "almost infinite amount" of alternative angles, lighting arrangements, and other configurations available to them. (Complaint ¶ 76.) The existence of many ways to implement a photographic idea does not transform the underlying method, technique, or style into protectable expression. *See Rentmeester*, 883 F.3d at 1119-20. The point of *scènes à*

*faire* and idea-expression doctrine is not that there is only one way to photograph an automobile; it is that the conventions used to do so belong to everyone.[3]

(2) EVOX's derivative-work theory fails because imitating a technique is not incorporating a copyrighted work

The same reasoning disposes of EVOX's derivative-work theory. EVOX alleges the outputs are derivative because they "imitate EVOX's distinctive creative techniques." (Complaint ¶ 106.) But a derivative work must *incorporate* a preexisting copyrighted work. *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 995 (9th Cir. 2024) ("[A] work is not derivative unless it has been substantially copied from the prior work." (citation omitted)). Functional or stylistic similarity is insufficient. *Id.* at 996 ("[D]erivative status does not turn on interoperability . . . if the work doesn't substantially incorporate the preexisting work's copyrighted material.").

A new automobile image is not derivative merely because it uses similar camera positioning, lighting, or reflection treatment. *Rentmeester*, 883 F.3d at 1119 (holding a photographer cannot prevent others from using the same techniques to create new images). Otherwise, copyright would become patent-like protection for a photographic method.

**B. EVOX's Own Selected Stability Outputs Do Not Copy Protectable Expression From The EVOX Photographs**

Copyright protects specific works. The expression at issue therefore is not an abstract combination of white background, three-quarter angle, controlled lighting, and soft shadows, but EVOX's particular depiction of a 2021 Ford Explorer using

---

[3] *Evox Productions LLC v. Kayak Software Corporation* is consistent with this analysis. No. CV15-5053, 2017 WL 5634856 (C.D. Cal. Jan. 20, 2017). In *Kayak*, EVOX "assert[ed] a copyright in [its] *actual* photographs," which Kayak displayed without authorization. *Id.* at *10 (emphasis in original). Here, EVOX is asserting a copyright in its overall "look." The *Kayak* court expressly held EVOX could not assert a copyright in its process or methods. *Id.* at *5, *10.

those techniques—including its body shape, proportions, grille, headlights, bumper cover, wheels, and other visible features.

The paired Stability output does not copy that expression. (*See* Complaint ¶ 79.) Whatever its stylistic similarities, it does not depict the same 2021 Ford Explorer design: the grille, headlights, bumper cover, proportions, and contours differ. Those are prominent features of the photograph's principal subject.

The BMW Z4 comparison is starker: the Stability output has different kidney grilles, air intakes, bumper cover, and front-end proportions. Similarities in angle, background, lighting, reflections, or aesthetic thus coexist with conspicuous differences in the dominant subject.

*2021 Ford Explorer*

| EVOX photograph of a 2021 Ford Explorer | Stability |
|---|---|
|  |  |

*2021 BMW Z4 Roadster*

| EVOX photograph of a 2021 BMW Z4 Roadster | Stability |
|---|---|
|  |  |

*2021 Audi Sportback Premium*

| EVOX photograph of a 2021 Audi Sportback Premium | Stability |
| --- | --- |
|  |  |

*2021 Lexus UX 200*

| EVOX photograph of a 2021 Lexus UX 200 | Stability |
| --- | --- |
|  |  |

*2021 Nissan Leaf S Plus*

| EVOX photograph of a 2021 Nissan Leaf S Plus | Stability |
| --- | --- |
|  |  |

*2021 Toyota Tacoma SR*

| EVOX photograph of a 2021 Toyota Tacoma SR | Stability |
|---|---|
|  |  |

The other comparisons show the same thing: the outputs differ in vehicle proportions and contours, grille and headlight designs, wheels, and other model-specific features, as well as angle, shadows, and reflections. Those differences also affect overall visual expression. *Rentmeester*, 883 F.3d at 1121-22 (differences in the subject's pose significant because they changed overall visual impact).[4]

That defeats EVOX's selection-and-arrangement theory. EVOX cannot locate copyright in each photograph's particular combination yet disregard major differences in the dominant subject and rely principally on unprotectable conventions. *Ets-Hokin*, 323 F.3d at 765-66 (distinguishing protectable expression from constraints and conventions of commercial product photography).

*Ets-Hokin* found no infringement between copyrightable commercial photographs of the same vodka bottle because, after accounting for the constraints of product photography, differences in lighting, angle, shadows, reflections, and background defeated infringement. *Id.* (finding no infringement among commercial

[4] EVOX's chosen examples suffer from an even more basic defect. The Complaint alleges the six EVOX photographs used for its output comparisons are identified in Exhibit B, (Complaint ¶ 79), but none appear to be listed there. EVOX cannot cure that defect by pointing to registrations for tens of thousands of different photographs: infringement must be assessed as to the particular protected work allegedly copied. *See* 17 U.S.C. § 411(a).

photographs of the same product). The case is stronger here in one respect. In *Ets-Hokin*, the bottle was "[t]he only constant" across the photographs—the same product each image depicted. *Id.* at 766. Here, even the vehicles depicted materially differ; most obviously, the Ford Explorers and BMW Z4s differ materially.

The commercial function reinforces the point. EVOX licenses photographs to dealers, portals, rental-car companies, travel sites, insurers, and others. (Complaint ¶¶ 19, 28.) Accurate vehicle depiction is central to those uses; a dealer could not substitute Stability's pleaded Explorer output when it visibly changes prominent features. The outputs therefore are not plausible substitutes in EVOX's identified markets.

At most, the comparisons show Stable Diffusion can employ conventions EVOX also uses. But EVOX cannot prevent others from "making photographs of vehicles using the same methods." *Kayak*, 2017 WL 5634856, at *10 (distinguishing copyright in EVOX's actual photographs from its unprotectable process).

*Kayak* also found these EVOX photographs entitled only to "thin" protection against virtually identical copying. *Id*. (EVOX could prevent unauthorized use of its photographs but not others' use of the same methods). *Ets-Hokin* likewise requires virtual identity where product-shot conventions constrain expression. 323 F.3d at 765-66 (requiring virtual identity for constrained commercial product photography).

EVOX's comparisons cannot satisfy that standard: the outputs use some similar conventions while materially changing the presentation and automobiles depicted. Nor does listing thousands of alleged training images cure the defect. The Complaint identifies no allegedly infringing output corresponding to those works beyond the six comparisons it chose to plead. Those examples are the only output-based instances actually identified, and even they do not plausibly allege copying of protectable expression.

EVOX thus asks copyright to protect the way it photographs cars, not its particular photographs. That is similarity of style and technique, not actionable copying. Count II should be dismissed.

### C. EVOX Independently Fails To Allege Volitional Conduct By Stability Causing The User-Generated Outputs

To sufficiently plead direct copyright infringement, a complaint must allege that the defendant engaged in "volitional conduct" that caused the infringement in question. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666-67 (9th Cir. 2017) (collecting cases). "[D]irect copyright liability for website owners arises when they are *actively involved* in the infringement." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (emphasis in original). There is no direct liability where "an online system 'responds automatically to users' input . . . without intervening conduct' by the website owner." *Id.* at 738 (citation omitted). Accordingly, EVOX must show that Stability engaged in conduct "other than general operation of its website." *Id.* at 732 (cleaned up). A website's "automatic" functionalities, "such as automatic copying, storage, and transmission of copyrighted materials," do not give rise to direct infringement liability. *Id.* (internal quotations omitted).

EVOX alleges no non-automatic conduct by Stability causing the generation of a challenged output. Instead, outputs are generated "in response to prompts from . . . users." (Complaint ¶ 108.) The Complaint does not allege that a Stability employee selected the image to generate, supplied the prompt, or initiated the particular generation event. The allegedly infringing reproduction instead occurs automatically when a user directs the system to generate an image. The relevant allegations thus implicate exclusively automated conduct by the image generator in response to users' prompts.

## III. EVOX FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT

EVOX alleges that third-party users directly infringed its copyrights and that defendants contributed to that infringement by creating and distributing AI image generators. (*Id.* ¶¶ 122-37.) The claim fails because EVOX does not adequately allege predicate user infringement and, independently, does not plead the intent *Cox* requires.

### A. EVOX Does Not Adequately Plead Predicate User Infringement Of The Asserted Works

Contributory liability requires direct infringement by a third party. *Amazon.com*, 508 F.3d at 1169 (holding secondary liability cannot exist without third-party direct infringement). As Section II explains, generating an automobile image with an EVOX-like aesthetic does not itself establish infringement.

EVOX does not adequately allege even one user's direct infringement. The Complaint says nothing about any specific users, posts, dates, or infringed images beyond the six images EVOX includes without identifying any third-party originator. (*See* Complaint ¶¶ 79-80.) Its generic allegation that users "have in fact" used image generators to create substantially similar works (*id.* ¶ 126) does not identify a predicate act of infringement. *See Eight Mile Style, LLC v. Meta Platforms, Inc.*, No. 2:25-cv-11618, 2026 WL 1735026, at *5 (E.D. Mich. June 16, 2026) (allegations were conclusory where plaintiff failed to plead facts about users and specific works); *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-CV-03811, 2025 WL 1487988, at *4 (N.D. Cal. Mar. 26, 2025) (no predicate act where unidentified users merely "can" prompt Claude); *Tarantino v. Gawker Media, LLC*, No. CV 14-603, 2014 WL 2434647, at *4 (C.D. Cal. Apr. 22, 2014) (dismissing claim where plaintiff identified no third-party infringer or instance of infringement).

The same defect defeats the knowledge requirement. Contributory liability requires knowledge of specific infringement, not generalized awareness that

infringement is possible. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). And knowledge cannot be inferred merely because works appeared in an AI training corpus. *Concord Music Grp.*, 2025 WL 1487988, at *5. Without an identified infringing user or act, EVOX cannot plausibly allege Stability knew of one.

### B. *Cox Communications* Forecloses Liability Based On Stability's Mere Distribution Of Technology Capable Of Infringing Use

Even assuming predicate infringement, *Cox* permits contributory liability only if the provider intended its service to be used for infringement; knowledge that infringement may occur is insufficient. *Cox,* 607 U.S. at 592-94 (requiring intent, not mere knowledge); *see also Luvdarts*, 710 F.3d at 1072. The plaintiff must show inducement or a service tailored to infringement. *Cox*, 607 U.S. at 593. EVOX pleads neither.

#### (1) EVOX does not plead affirmative inducement by Stability

Inducement requires specific acts actively encouraging infringement. *Cox*, 607 U.S. at 593-94. EVOX points to Stability's CEO's statement that the model can "recreate" and "iterat[e]" training images, the free distribution of Stable Diffusion, and failure to adopt content control measures. (Complaint ¶ 131.) None encourages infringement of EVOX's works. *See Eight Mile Style*, 2026 WL 1735026, at *5 (holding encouragement to use a platform's tools is not encouragement to infringe); *Cox*, 607 U.S. at 594 (holding failure to take affirmative preventive steps insufficient for liability).

#### (2) EVOX cannot plausibly allege that Stable Diffusion is tailored to infringement

Nor is Stable Diffusion tailored to infringement. A technology capable of substantial non-infringing uses cannot support liability merely because it can also infringe. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) (protecting technologies capable of substantial non-infringing uses); *Eight Mile Style*, 2026 WL 1735026, at *5 (dismissing contributory infringement claim where tools

were not alleged incapable of substantial non-infringing uses). The Complaint itself describes a general-purpose model that generates images from users' own descriptive prompts. (Complaint ¶ 54.) Count IV should be dismissed.

## IV. EVOX FAILS TO STATE A DMCA CLAIM

Count V asserts two DMCA theories: that Stability removed or altered EVOX CMI during training (the "input theory") and distributed AI-generated images without EVOX CMI (the "output theory"). (Complaint ¶¶ 138-51.)[5] Both fail. Absence of EVOX CMI from a different generated image does not establish removal from an EVOX work during training; and the Ninth Circuit has held that absence of CMI from AI-generated works does not establish a Section 1202(b) violation. Both theories also fail the statute's knowledge and infringement-related scienter requirements.

### A. Input Theory: Absence Of EVOX CMI In A Generated Image Does Not Establish Removal Of CMI During Training

EVOX alleges its photographs contain visible "© EVOX IMAGES" notices and/or embedded metadata constituting CMI, while generated outputs do not. (*Id.* ¶¶ 140-43.) But absence of source CMI from a different generated image does not establish removal from the source work.

Stability's model allegedly generates new automobile images using similar photographic techniques. (*Id.* ¶¶ 76-77.) Their lack of EVOX CMI therefore does not show removal from EVOX photographs during training. *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 938-39 (C.D. Cal. 2018) (absence of CMI does not necessarily establish its removal or alteration).

---

[5] CMI includes the titles of works, their authors, and other information. 17 U.S.C. § 1202(c).

### B. Output Theory: *Doe 1 v. GitHub, Inc.* Forecloses EVOX's Theory That Absence Of CMI In A Generated Image Shows A Violation Of Section 1202(b)

Section 1202(b) requires removing CMI from or changing it on an existing protected work; alleging that a new similar or derivative work lacks the plaintiff's CMI is insufficient. *GitHub*, 2026 WL 2728464, at *5 (holding a defendant cannot remove CMI from a new work to which that CMI was never attached).

*GitHub* is on all fours. There, plaintiffs described Copilot as an AI tool that "creates new work" based on training material rather than reproducing stored work. *Id.* at *5. EVOX likewise calls Stable Diffusion a tool that "generates a[n] . . . image in response to [a text] prompt based on the images the model was trained on." (Complaint ¶ 54.) *GitHub* rejected the theory even though plaintiffs alleged "essentially verbatim" outputs. 2026 WL 2728464, at *2, *6. EVOX's allegation of substantial similarity (Complaint ¶ 75) fares no better.

Because the generated images are not copies of EVOX photographs from which CMI was removed, *GitHub* forecloses EVOX's output theory.

### C. EVOX Fails To Allege The Scienter Required By Section 1202(b)

Both Sections 1202(b)(1) and 1202(b)(3) contain a demanding "double scienter" requirement. *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290, 2022 WL 4348460, at *3 (N.D. Cal. Sept. 19, 2022) (citation omitted). Section 1202(b)(1) requires a plaintiff to allege that a defendant (1) *intentionally* removed CMI (2) "*knowing*, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any" copyright. 17 U.S.C. § 1202(b) (emphasis added). Section 1202(b)(3) requires a plaintiff to allege that a defendant (1) distributed works *knowing* that CMI had been altered or removed and (2) "*knowing*, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any" copyright. *Id.* (emphasis added).

EVOX pleads neither prong adequately.

(1) Section 1202(b)(1): EVOX does not plausibly allege Stability intentionally removed CMI

EVOX does not plausibly allege intentional removal of CMI from its works. *Pinterest*, 2022 WL 4348460, at *4 (dismissing claim where plaintiff did not allege defendant was aware of specific works on its platform or that they contained CMI at time of upload).

The absence of EVOX CMI from generated outputs does not support intent. *Concord Music Grp*., 2025 WL 1487988, at *6 (absence of CMI from near-verbatim AI outputs insufficient to infer intentional removal). EVOX identifies no Stability actor, process, or training step at which CMI was removed from any particular EVOX photograph. Alleging removal occurred "at some point" merely assumes the act Section 1202(b)(1) requires it to plead.

(2) Section 1202(b)(3): EVOX does not plausibly allege Stability distributed works

EVOX also does not allege that Stability distributed EVOX "works" or "copies of [its] works." 17 U.S.C. § 1202(b)(3); *see* Sections II, IV.B. It alleges that Stability distributed generated images that are substantially similar to EVOX's works, not copies from which CMI was removed. (Complaint ¶¶ 75-77.)

(3) Sections 1202(b)(1),(3): EVOX fails to allege Stability knew or had reasonable grounds to know the alleged removal of CMI would "induce, enable, facilitate, or conceal an infringement of any" copyright

The second scienter prong requires awareness that CMI removal will facilitate or conceal identifiable infringement. *Pinterest*, 2022 WL 4348460, at *5. EVOX alleges removal made it harder for "downstream users and the public" to identify EVOX as the author and recognize unauthorized use. (Complaint ¶ 150.) But those users do not see EVOX's source works. (*Id.* ¶¶ 75-77.) *The Intercept Media, Inc. v. OpenAI, Inc*. rejects an analogous theory: removing CMI from works in a nonpublic

database does not plausibly conceal infringement. 767 F. Supp. 3d 18, 30 (S.D.N.Y. 2025).

EVOX otherwise merely recites that Stability "knew" or had "reasonable grounds to know." (Complaint ¶¶ 147, 150.) This is not enough. *See Pinterest*, 2022 WL 4348460, at *5.

### D. EVOX Lacks Standing To Bring A DMCA Claim

Article III requires concrete injury even for a statutory violation. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). EVOX does not allege Stability's outputs include EVOX works or copies and thus alleges no concrete injury supporting damages. *See Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 6 (S.D.N.Y. 2024), *reconsideration denied sub nom. In re OpenAI, Inc., Copyright Infringement Litig.*, No. 24-CV-01514, 2025 WL 1707564 (S.D.N.Y. June 18, 2025). It likewise alleges no imminent injury supporting injunctive relief because it does not allege future outputs may include EVOX works or copies. *See id.* at 6-7; *cf. GitHub*, 2026 WL 2728464, at *4 (finding standing where model had and might reproduce plaintiffs' works verbatim).

## V. EVOX FAILS TO STATE CLAIMS AGAINST STABILITY AI US SERVICES CORPORATION AND STABILITY AI, INC.

EVOX cannot hold three corporations—Stability AI, Inc. ("Stability US"), Stability AI US Services Corporation ("Stability Services"), and Stability AI Ltd. ("Stability UK")—liable merely by defining them collectively as the "Stability Entities." (Complaint ¶ 9.) Direct liability attaches to the entity performing volitional conduct. *VHT*, 918 F.3d at 732 (requiring active involvement); *Giganews*, 847 F.3d at 666 (requiring volitional conduct). Because EVOX alleges no claim-producing conduct by Stability Services or Stability US individually, both should be dismissed.

### A. EVOX Does Not Allege Actionable Conduct By Stability AI US Services Corporation And Stability AI, Inc.

The Complaint alleges that Stability US is the parent of Stability UK and Stability Services and that California personnel who provide services to Stability UK are employed by Stability Services. (Complaint ¶¶ 7-9.) Yet every substantive act is attributed to the collective. (*See, e.g., id*. ¶¶ 38, 43, 52, 54, 57, 59, 67, 68, 93-100.)

EVOX's group pleading fails Rule 8(a). *See Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-cv-0725, 2022 WL 16985001, at *2 (S.D. Cal. Nov. 16, 2022) (pleading naming multiple defendants must "establish the specific personal involvement" of each (citation omitted)). A parent "is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Lancaster v. Alphabet Inc.*, No. 15-CV-05299, 2016 WL 3648608, at *7 (N.D. Cal. July 8, 2016) (dismissing copyright claims against parent under that "deeply ingrained" principle). Nor does Stability Services' employment of personnel serving Stability UK support liability. *Cf. Marsh v. Tilley Steel Co.*, 26 Cal. 3d 486, 492 (Cal. 1980) (where special employer controls lent employees, it becomes solely liable for job-related torts).

### B. EVOX's Alter Ego Allegations Do Not Supply The Missing Conduct

EVOX invokes alter ego. (Complaint ¶¶ 15-16.) For a finding of alter ego, California requires both unity of interest sufficient to erase separate corporate personalities and an inequitable result from respecting separateness. *Sonora Diamond Corp. v. Superior Ct*., 83 Cal. App. 4th 523, 538 (2000); *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1073 (9th Cir. 2015) (requiring "fraud or injustice").

EVOX merely recites those elements without supporting facts. (Complaint ¶ 15.) That is insufficient. *See Tamraz*, 2022 WL 16985001, at *4 (dismissing conclusory alter-ego allegations); *Twombly*, 550 U.S. at 555 (rejecting formulaic recitation of elements).

Alter ego is not established even where a parent wholly owns a subsidiary, shares officers and directors, co-employs staff, "macro-manages" it, and shares office space. *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1068 (C.D. Cal. 2002) (no alter ego absent undercapitalization, commingling of funds, or disregard of corporate formalities); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134-35 (9th Cir. 2003) (requiring such control "so as to 'render the latter the mere instrumentality of the former'") (citation omitted)); *Ranza*, 793 F.3d at 1073-74 (requiring "pervasive control" over "every facet" of subsidiary's business). EVOX's conclusory allegations do not plausibly establish alter ego.

DATED: October 12, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Shon Morgan*
Shon Morgan
Andrew H. Schapiro
Kevin P.B. Johnson

*Attorneys for Defendants Stability AI, Inc., Stability AI Ltd., and Stability AI US Services Corporation*

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Defendants Stability AI, Inc., Stability AI Ltd., and Stability AI US Services Corporation, certifies that this brief contains 6,867 words, which complies with the word limit of L.R. 11-6.1.

October 12, 2026

*/s/ Shon Morgan*
Shon Morgan