KEKER, VAN NEST & PETERS LLP
DAVID SILBERT - #173128
dsilbert@keker.com
PAVEN MALHOTRA - #258429
pmalhotra@keker.com
BAILEY W. HEAPS - #295870
bheaps@keker.com
JULIA L. GREENBERG - #333864
jgreenberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant
RUNWAY AI, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION – LOS ANGELES

EVOX PRODUCTIONS, LLC, a Delaware limited liability company,

Plaintiff,

v.

STABILITY AI, INC., a Delaware corporation; STABILITY AI LTD., a UK corporation; STABILITY AI US SERVICES CORPORATION, a Delaware corporation; RUNWAY AI, INC., a Delaware corporation; HUGGING FACE, INC., a Delaware corporation; DEVIANTART, INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendant.

Case No. 2:26-cv-07201-CAS-RAO

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RUNWAY AI, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: January 11, 2027
Time: 10:30 a.m.
Dept: Courtroom 8D, 8th Floor
Judge: Hon. Christina A. Snyder

Date Filed: July 2, 2026

Trial Date: Not Set

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 5

A. Count One is time-barred. ........ 6

B. Count Two fails because the pleaded works are not substantially similar. ........ 8

C. Count Four fails under *Cox*. ........ 12

1. EVOX pleads no act of third-party infringement. ........ 13

2. EVOX pleads no knowledge of specific acts of infringement. ........ 14

3. EVOX pleads no intent to facilitate infringement. ........ 15

D. Count Five fails under the DMCA. ........ 17

1. EVOX's Output Theory is foreclosed as a matter of law. ........ 18

2. EVOX's Training Theory fails because EVOX does not plausibly plead removal of CMI during training. ........ 19

3. Both of EVOX's DMCA theories fail because EVOX does not plausibly plead double scienter. ........ 20

V. CONCLUSION ........ 21

CERTIFICATE OF COMPLIANCE ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ........ 12

*Art Records LLC v. YouTube LLC*,
No. 25-cv-05069, 2026 WL 1669167 (N.D. Cal. June 9, 2026) ........ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 16

*Barnes v. Sanchez*,
No. 25-cv-05901, 2026 WL 1912085 (N.D. Cal. July 2, 2026) ........ 14, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5, 14, 19

*Concord Music Grp., Inc. v. Anthropic PBC*,
No. 24-cv-03811, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) .... 13, 14, 15, 21

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ........ 6

*Cox Communications, Inc. v. Sony Music Entertainment.*,
607 U.S. 583 (2026) ........ *passim*

*Doe v. GitHub, Inc.*,
No. 24-7700, --- F.4th ----, 2026 WL 2728464 (9th Cir. Sep. 16, 2026) ........ *passim*

*Epidemic Sound, AB v. Meta Platforms, Inc.*,
2026 WL 2021347 (N.D. Cal. July 13, 2026) ........ 13

*Ets-Hokin v. Skyy Spirits, Inc.*,
323 F.3d 763 (9th Cir. 2003) ........ 9, 10, 11

*EVOX Prods. LLC v. Kayak Software Corp.*,
No. 15-cv-5053, 2017 WL 5634856 (C.D. Cal. Jan. 20, 2017) ........ 10

*Falkner v. GM, LLC*,
393 F. Supp. 3d 927 (C.D. Cal. 2018) ........ 20

*Gray v. Perry*,
No. 2:15-cv-05642, 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020),
*aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022) .............................. 12

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) .............................................................................. 6

*Kitsch LLC v. Viori Beauty PBC*,
No. 2:25-cv-10830, 2026 WL 1356424 (C.D. Cal. May 8, 2026) ........................ 9

*Klauber Bros., Inc. v. P.J. Salvage*,
No. 18-cv-5470, 2018 WL 6984817 (C.D. Cal. Oct. 30, 2018) ......................... 12

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) .............................................................................. 6

*Lee v. SBS Corp.*,
No. 2:26-cv-03144, 2026 WL 2261023 (C.D. Cal. Aug. 5, 2026) ............. 15, 17

*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984) ............................................................................ 12

*Luvdarts, LLC v. AT&T Mobility LLC*,
710 F.3d 1068 (9th Cir. 2013) ............................................................................ 14

*Media Rights Tech., Inc. v. Microsoft Corp.*,
922 F.3d 1014 (9th Cir. 2019) .............................................................................. 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ..................................................................................... 15, 17

*Michael Grecco Prods., Inc. v. TikTok, Inc.*,
829 F. Supp. 3d 793 (C.D. Cal. 2025) ................................................................ 15

*Milkcrate Athletics, Inc. v. Adidas America, Inc.*,
619 F. Supp. 3d 1009 (C.D. Cal. 2022) .............................................................. 10

*Moreland Apartments Assocs. v. LP Equity LLC*,
No. 5:19-cv-00744, 2019 WL 6771792 (N.D. Cal. Dec. 12, 2019) .................. 19

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ............................................................................ 16

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) .............................................................................. 12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) .......... 6

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018), *overruled in part on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2018) .......... 9, 10

*Robinson v. Binello*, 771 F. Supp. 3d 1114 (N.D. Cal. 2025) .......... 14

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251 (9th Cir. 2013) .......... 5

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .......... 8, 9

*Stabile v. Paul Smith, Ltd.*, 137 F. Supp. 3d 1173 (C.D. Cal. 2015) .......... 13, 14

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) .......... 19, 20, 21

*Steward v. West*, No. 13-cv-02449, 2013 WL 12120232 (C.D. Cal. Sep. 6, 2013) .......... 19

*Tarantino v. Gawker Media, LLC*, No. 14-cv-603, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) .......... 14

*Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024) .......... 20, 21

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019) .......... 16

*Woodland v. Hill*, 136 F.4th 1199 (9th Cir. 2025) .......... 9

**Federal Statutes**

17 U.S.C. § 507(b) .......... 6

17 U.S.C § 1202(b) .......... *passim*

**Rules**

Fed. R. Civ. P. 8(c)(1) .......... 6

Fed. R. Civ. P. 12(b)(6) .......... 3, 6, 9, 19

**Other Authorities**

"Customer Stories: How 'House of David' Used Runway to Become Amazon's Latest Hit Series" (Sep. 10, 2025), https://runway.com/customers/how-house-of-david-used-runway-to-become-amazons-latest-hit-series .......... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Runway develops creative tools principally for moving images—tools used by filmmakers, visual-effects artists, videographers, and other creators to generate and manipulate video. Plaintiff EVOX operates in a different market: it licenses standardized still photographs of automobiles—shot at a fixed angle, camera height, and rotation against a white cyclorama—to dealerships and automotive portals.[1] Yet the Complaint repeatedly treats Runway as interchangeable with EVOX, and with Defendants Stability AI and DeviantArt, as though all made the same products and generated the same outputs. Its own exhibits show why that approach fails: every alleged Runway output differs from the corresponding EVOX photograph, and from the outputs attributed to other defendants, in the very features EVOX says define its protected expression.[2]

**Count Two (direct copyright infringement for outputs) fails on the face of those side-by-side comparisons**. EVOX claims protection only in a particular combination of choices, including a white cyclorama background; a camera height near the wheel wells; a precise degree of vehicle rotation; colorless reflections; soft-edged shadows; and windows treated to minimize reflection so the interior remains visible.[3] But Runway's alleged outputs use gray backgrounds (not white), visible floor planes and horizons (not a cyclorama), different angles and framing, and materially different lighting, reflections, and shadows.[4] Because EVOX's commercial product photos receive—at most—thin protection, those differences defeat substantial similarity as a matter of law.

**Count Four (contributory copyright infringement) fails under the**

---

[1] Compl. ¶¶ 17–19, 27–31.

[2] Compl. ¶¶ 79–80.

[3] Compl. ¶¶ 21–24, 75–81.

[4] *See* Compl. ¶¶ 79–80.

**Supreme Court's decision in *Cox Communications, Inc. v. Sony Music Entertainment*.** Under *Cox*, a service provider can be "contributorily liable" for a user's infringement "only if it ***intended*** that the provided service be used for infringement," shown through inducement or a service tailored to infringement. 607 U.S. 583, 592–93 (2026).[5] EVOX identifies no third-party user who infringed any EVOX photograph and no Runway statement or act encouraging any such infringement. It instead relies on statements by ***Stability's*** former CEO, Runway's release of a general-purpose tool, and Runway's supposed failure to adopt filters.[6] *Cox* forecloses that theory.

**Count Five (violation of the Digital Millennium Copyright Act) is foreclosed by *Doe v. GitHub, Inc*.** Section 1202(b) requires removal or alteration of copyright management information ("CMI") from an existing work; it does not reach a newly generated work that omits another work's CMI. *Doe v. GitHub, Inc.*, No. 24-7700, --- F.4th ----, 2026 WL 2728464, at *5–7 (9th Cir. Sep. 16, 2026). The Complaint describes Runway's tools as generating new images from prompts, and its side-by-side comparisons confirm that the outputs are newly generated.[7] Under *GitHub*, the absence of EVOX's watermark or metadata from those generated outputs is not "removal." *See id.* at *5. The Complaint also alleges no facts supporting scienter under either EVOX's training or output DMCA theories, and EVOX's training theory fails for the additional reason that the Complaint identifies no Runway act or process that removed CMI.[8]

**Count One (direct copyright infringement for model training) is time-barred on the Complaint's own allegations**. EVOX sued on July 2, 2026. It

---

[5] Unless otherwise indicated, emphasis in quotations has been added and internal quotation marks and citations have been omitted.

[6] Compl. ¶¶ 128–31.

[7] Compl. ¶¶ 79–80.

[8] Compl. ¶¶ 141–47.

alleges that by October 2022, the LAION datasets were public and searchable; Stable Diffusion had been publicly released; Runway had publicly disclosed that its latent-diffusion work used LAION; and many of the relevant dataset URLs contained EVOX file names and led to images displaying the "© EVOX IMAGES" mark.[9] EVOX's conclusory assertion that even with reasonable diligence it could not have discovered the alleged copying until some unspecified point in July 2023[10] cannot be reconciled with the public information the Complaint pleads—particularly for a sophisticated licensor that says it has long used watermarks, metadata, robots.txt instructions, and monitoring measures to detect unauthorized use.[11]

Ultimately, in addition to asserting an untimely direct infringement claim based on model training (Count One), EVOX asks the Court to disregard the numerous differences between its photographs and Runway's alleged model outputs (Count Two); infer copying from a new work's failure to bear another's watermark (Count Five); and impute infringing intent based solely on Runway's participation in generative artificial intelligence ("AI") (Count Four). Rule 12(b)(6) does not permit the Court to do so. Counts One, Two, Four, and Five should be dismissed as to Runway.

## II. FACTUAL BACKGROUND

Runway was founded in 2018 by three New York University art students.[12] It is a company built by creators to empower other creators to tell their stories and express their ideas in new ways through video, audio, and other diverse media. The

---

[9] Compl. ¶¶ 38–60.

[10] Compl. ¶ 74.

[11] Compl. ¶¶ 31–35.

[12] Runway provides this overview for background and context, but acknowledges that for purposes of this motion only, the Court must accept Plaintiff's well-pleaded allegations as true.

video-effects team behind Amazon Prime's hit series House of David, for example, used Runway's tools to create blockbuster-caliber special effects, completing in minutes tasks that previously consumed hours or days and saving more than five months of post-production editing.[13] Grammy-nominated musicians, independent filmmakers, and other creators also rely on Runway. As an artist-founded and artist-led company, Runway is dedicated to collaborating with, and developing tools for, the creative community.

Unlike Runway, EVOX operates a commercial automotive photography business.[14] It licenses standardized photographs of vehicle makes and models to automotive businesses, individually or by subscription.[15] EVOX alleges that the framing, placement, lighting, and other choices in those product photographs, taken in combination, constitute protectable expression.[16]

EVOX's claims against Runway trace to LAION-5B, a dataset of 5.85 billion image-caption pairs released publicly in October 2022, as well as LAION-2B-en, a subset of LAION-5B that contains two billion image-caption pairs (collectively, the "LAION datasets").[17] EVOX contends that these datasets contain URL links to at least 103,957 of EVOX's copyrighted images of vehicles (the "Copyrighted Photographs").[18] EVOX alleges that the LAION datasets were used to train Stable Diffusion, an AI image-generation model first released by Defendants Stability AI, Stability UK, and Stability US (collectively, the "Stability Defendants") in August

---

[13] *See* "Customer Stories: How 'House of David' Used Runway to Become Amazon's Latest Hit Series" (Sep. 10, 2025), https://runway.com/customers/how-house-of-david-used-runway-to-become-amazons-latest-hit-series.

[14] Compl. ¶ 17.

[15] Compl. ¶¶ 19, 27–31.

[16] Compl. ¶¶ 21–24.

[17] Compl. ¶¶ 37–40.

[18] Compl. ¶ 44; *id*. Ex. B.

2022.[19] According to EVOX, Runway was "an essential research partner" in developing Stable Diffusion and also used the LAION datasets to train another model called "LDM-4."[20]

Based on these allegations, EVOX asserts four claims against Runway: direct infringement based on model training (the "Model Training Claim") (Count One);[21] direct infringement based on model outputs (the "Model Output Claim") (Count Two);[22] contributory infringement based on third parties' use of Runway's models (Count Four);[23] and violations of DMCA § 1202(b) based on alleged removal or alteration of CMI from the Copyrighted Photographs during model training (the "Training Theory") and from model outputs (the "Output Theory") (Count Five).[24]

## III. LEGAL STANDARD

A complaint must plead facts supporting a plausible claim, not labels, conclusions, or a formulaic recitation of elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). The Court should not accept "as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

## IV. ARGUMENT

Each claim against Runway fails the *Twombly* standard. Amendment would be futile because the defects arise from the Complaint's own chronology and

---

[19] Compl. ¶¶ 54, 57.

[20] Compl. ¶¶ 55, 58. For additional context, Runway notes that Stable Diffusion 1.5—the "Stable Diffusion" model referenced in the Complaint—is deprecated, as are the models derived from it.

[21] *See* Compl. ¶¶ 89–100 (Count One).

[22] Compl. ¶¶ 101–11.

[23] Compl. ¶¶ 122–37.

[24] Compl. ¶¶ 138–51.

exhibits, controlling law, or the absence of facts showing any misconduct. *See* Fed. R. Civ. P. 12(b)(6); *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

**A. Count One is time-barred.**

Count One alleges that Runway reproduced the Copyrighted Photographs while training Stable Diffusion and other models (the "Model Training Claim").[25]

A copyright claim must be filed "within three years after [it] accrued." 17 U.S.C. § 507(b). Under the discovery rule, EVOX's claim accrued when EVOX discovered or reasonably should have discovered Runway's alleged infringement. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671–72 (2014); *Media Rights Tech., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019). Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) is appropriate when, as here, untimeliness is apparent on the face of the Complaint. *See* Fed. R. Civ. P. 8(c)(1); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

EVOX sued on July 2, 2026. Accordingly, EVOX's Model Training Claim is time-barred if reasonable diligence would have revealed the alleged training use before July 2, 2023. The Complaint's own allegations show that it would have: every essential component of the Model Training Claim—the nature of Runway's AI models, the LAION datasets, and Runway's alleged use of the LAION datasets to train its models—was public ***by October 2022***.

Stable Diffusion was publicly released in ***August 2022***.[26] And between ***April and October 2022***, Runway allegedly publicly described its role in Stable Diffusion

---

[25] Compl. ¶¶ 89–100.

[26] *See* Compl. ¶¶ 54, 57 & n.6. The Court may consider the publicly available materials cited in the Complaint in deciding this Motion because EVOX expressly cites and relies on them; their authenticity is not disputed; and their relevance is not in question. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (collecting cases).

and publicly stated its image models were "trained on the LAION database."[27] The LAION datasets themselves were made public by ***October 2022***.[28] Thus, more than eight months before the statute of limitations cutoff, EVOX had public notice of the models, the datasets used to train them, Runway's alleged role, and the alleged connection between them.

Paragraph 74's concealment allegation does not excuse EVOX's delay.[29] EVOX asserts that the downloads and training occurred inside Defendants' systems and that removal of CMI made the use harder to detect.[30] But Count One does not depend on observing internal training steps (which EVOX has not observed to this day, although it still managed to draft the Complaint). It depends on the public facts that Runway used LAION, LAION contained links to EVOX images, and training allegedly required following those links and downloading the linked images.[31] Paragraph 74 does not explain why those facts could not have been investigated before July 2023.

On the contrary, the Complaint confirms that the investigation was straightforward. EVOX alleges that it found ***more than 100,000*** of its photographs in the public LAION datasets (the Copyrighted Photographs).[32] It further asserts that "[m]any of the 103,957 URL links to the Copyrighted Photographs in the LAION datasets also ***contain the exact EVOX 'file name'*** for the Copyrighted Photograph displayed at the link."[33] EVOX—a sophisticated licensor that says it

---

[27] *See* Compl. ¶¶ 55, 58 & n.7, 68 & n.12.

[28] *See* Compl. ¶¶ 38, 39 & n.4.

[29] *See* Compl. ¶ 74 (claiming EVOX "did not discover, and in the exercise of reasonable diligence could not have discovered, Defendants' unauthorized reproduction and use of the Copyrighted Photographs until July 2023").

[30] Compl. ¶ 74.

[31] *See* Compl. ¶¶ 44, 58–59.

[32] *See* Compl. ¶¶ 44, 47; *id*. Ex. B.

[33] Compl. ¶ 47.

has long used watermarks, metadata, robots.txt instructions, and monitoring measures to detect unauthorized use—offers no explanation for why it could not have performed this same public search prior to July 2023—particularly when all of the allegations lodged in its Complaint are based on materials in the public domain (by October 2022) and nothing more.[34]

Because the Complaint establishes that reasonable diligence would have revealed the alleged Model Training Claim more than three years before the suit, that claim is time-barred.

### B. Count Two fails because the pleaded works are not substantially similar.

Count Two alleges that Runway's outputs are copies or derivative works of EVOX's photographs.[35] But the side-by-side comparisons that are incorporated into the Complaint defeat that claim.

To state a claim, EVOX must plausibly allege that (1) it owns valid copyrights in the Copyrighted Photographs; and (2) Runway copied protected aspects of those images. *See Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

EVOX's claim fails at the first step. As explained in DeviantArt's concurrently filed motion to dismiss, which Runway incorporates by reference, EVOX does not plausibly allege registrations for the six "Copyrighted Photographs" in its side-by-side comparisons in paragraphs 79 and 80 of the Complaint. None of the six EVOX photographs appear to be included in Exhibits B or C of the Complaint, which EVOX contends contain a "complete list" of the infringed photographs.[36] This threshold defect requires dismissal of Count Two.

Even if EVOX plausibly alleged valid copyrights in the six photographs (it

---

[34] *See*, *e.g.*, Compl. ¶¶ 32–36, 45.

[35] Compl. ¶¶ 101–11.

[36] Compl. ¶ 18.

did not), Count Two independently fails because the side-by-side comparisons confirm that Runway did not copy protected aspects of those photographs. This prong of the direct infringement analysis contains two components: "copying" and "unlawful appropriation." *Skidmore*, 952 F.3d at 1064. At the pleading stage, EVOX must satisfy the "extrinsic test," which "compares the objective similarities of specific expressive elements in the two works." *See id.* A court may perform that comparison on a motion to dismiss when the works are incorporated into the complaint and no reasonable juror could find the required similarity. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018), *overruled in part on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2018); *see also Woodland v. Hill*, 136 F.4th 1199, 1217 (9th Cir. 2025) (affirming Rule 12(b)(6) dismissal of direct-infringement claim for lack of substantial similarity); *Kitsch LLC v. Viori Beauty PBC*, No. 2:25-cv-10830, 2026 WL 1356424, at *6 (C.D. Cal. May 8, 2026) (dismissing product-photograph claim at pleading stage for lack of similarity).

EVOX disclaims protection in the cars themselves (which comprise most of each photograph) and in any individual element of the photo's design. It claims protection only in a ***combination*** of familiar product-photography conventions: a white cyclorama background, a particular camera angle and height, lighting, reflections, and shadows.[37] *See, e.g.*, *Woodland*, 136 F.4th at 1210–11 (explaining that for photographs, "[i]f sufficiently original, [only] the combination of subject matter, pose, camera angle, etc., receives protection, not any of the individual elements standing alone").

That combination receives—at most—only "thin" copyright protection. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003). *Ets-Hokin* is directly on point. It held that commercial product photographs of a vodka bottle received only thin protection because the product and conventions of commercial photography constrained the available expression. *Id.* The same is true here: there

---

[37] *See* Compl. ¶¶ 75–81, 106–07.

are only so many ways to take a commercial stock photograph of a car. A consumer in the market for a new vehicle, for instance, wants to see the ***exact*** vehicle she is considering—not an artistic rendition of a similar car. The commercial conventions that EVOX lists narrow the range of potential expressive choices; they do not expand it.

Consistent with *Ets-Hokin*, courts have repeatedly applied the "thin protection" doctrine to commercial or stock photographs like EVOX's. *See, e.g.*, *Milkcrate Athletics, Inc. v. Adidas America, Inc.*, 619 F. Supp. 3d 1009, 1018–19 (C.D. Cal. 2022) (collecting cases and concluding that plaintiff's logo received only thin protection because it "essentially consists of an arrangement of two everyday objects"—a record and a milk crate—with a "narrow range of expression"). Indeed, a court in this district has already applied *Ets-Hokin* to EVOX's copyrighted photographs of vehicles—the same photographs at issue here—and held that they receive only "a 'thin' copyright." *See EVOX Prods. LLC v. Kayak Software Corp.*, No. 15-cv-5053, 2017 WL 5634856, at *10 (C.D. Cal. Jan. 20, 2017).

EVOX's thin copyright "protects against only virtually identical copying." *See Ets-Hokin*, 323 F.3d at 766; *Kayak Software*, 2017 WL 5634856, at *10 (same). Thus, even "subtle differences in lighting, camera angle, and background [are] sufficient to render the defendant's otherwise similar-looking photos . . . non-infringing." *Rentmeester*, 883 F.3d at 1120. The Complaint's own side-by-side comparisons show differences far greater than that.

Most prominently, for each of the six vehicles shown in paragraphs 79 and 80, the alleged Runway output uses a gray background with a visible floor or horizon rather than EVOX's white cyclorama background. Further, each of the alleged Runway outputs features a reflective glare absent from the corresponding EVOX photograph and depicts different lighting, angles, and shadows.[38] The vehicle-specific details also differ. The "Audi Sportback Premium" model output,

[38] *See* Compl. ¶¶ 79–80.

for example, is white rather than silver, and, unlike the corresponding Copyrighted Photograph, has a license plate, as well as different headlights and hubcaps:[39]

**EVOX Photograph of a 2021 Audi Sportback Premium**



**Runway "2021 Audi Sportback Premium" Model Output**



The same is true across the other comparisons. The "Ford Explorer" output has different hubcaps, a different front end, and different side-view mirrors, in addition to a different background, a different angle, different reflections, and different shadows.[40] The "BMW Z4 Roadster" output depicts a white rather than silver vehicle and has different rear seats, different hubcaps, a different side panel, and different headlights.[41] Likewise, in addition to the differences in background, reflection, and lighting, the "Nissan Leaf S Plus" and "Lexus UX 200" outputs have different headlights and hubcaps.[42]

As in *Ets-Hokin*, the alleged Runway outputs "differ [from EVOX's photographs] in as many ways as possible within the constraints of the commercial product shot."[43] *See* 323 F.3d at 766. Even more fundamentally, as the side-by-side comparisons show, EVOX's photographs and Runway's alleged model outputs do not even depict the same ***vehicle design***. That falls far short of the "virtually

[39] Compl. ¶ 80.

[40] *See* Compl. ¶ 79.

[41] *See* Compl. ¶ 80.

[42] *See* Compl. ¶ 80.

[43] Compl. ¶¶ 75–81, 106–07.

identical" standard required to survive dismissal. *See also Gray v. Perry*, No. 2:15-cv-05642, 2020 WL 1275221, at *13 (C.D. Cal. Mar. 16, 2020) (defendants entitled to judgment as a matter of law on direct infringement claim because the two musical ostinatos were not virtually identical), *aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022).

EVOX cannot save its claim by appealing to photographs that are not depicted in the Complaint. Exhibits B and C list alleged training images, but the Complaint pleads no allegedly infringing output pair beyond the six identified ones. Tellingly, EVOX did not even disclose the prompts used to generate the alleged Runway outputs featured in the side-by-side comparisons—presumably because it deliberately crafted its prompts in an effort to generate close matches to the EVOX photographs incorporated in the Complaint. But even these handpicked examples are far from "virtually identical" in the combination of features over which EVOX claims protection, warranting dismissal. *See, e.g.*, *Klauber Bros., Inc. v. P.J. Salvage*, No. 18-cv-5470, 2018 WL 6984817, at *6 (C.D. Cal. Oct. 30, 2018) (dismissing direct infringement claim because the single "exemplar" side-by-side comparison in complaint failed substantial similarity test as a matter of law).

Nor can EVOX avoid dismissal by calling the outputs "derivative works." A derivative-work theory still requires substantial similarity in protected expression. *See, e.g.*, *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (collecting cases). Because the incorporated works foreclose that showing, Count Two should be dismissed without leave to amend.

### C. Count Four fails under *Cox*.

Contributory liability requires direct infringement by a third party. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001). To state a claim, EVOX must show that Runway "(1) has knowledge of another's infringement and (2) . . . induces that infringement." *Perfect 10, Inc. v. Visa Int'l*

*Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).[44] It must also show intent. "The provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement." *Cox*, 607 U.S. at 592–93. "The intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement." *Id.* at 593.

EVOX's Complaint pleads none of these elements. It identifies no acts of third-party infringement, no facts showing that Runway had knowledge of any such infringement, and no facts showing that Runway intended to facilitate any infringement.

**1. EVOX pleads no act of third-party infringement.**

EVOX identifies no user who used a Runway tool to reproduce any Copyrighted Photograph. This alone is fatal. "The existence of direct infringement is a necessary element of a claim for contributory infringement." *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811, 2025 WL 1487988, at *3 (N.D. Cal. Mar. 26, 2025) (cleaned up); *Stabile v. Paul Smith, Ltd.*, 137 F. Supp. 3d 1173, 1191 (C.D. Cal. 2015) (where "there is no direct infringement, there can be no . . . contributory copyright infringement").

EVOX alleges only "[o]n information and belief" that "third-party users have in fact used" Runway "to reproduce, or to create works substantially similar to," the Copyrighted Photographs.[45] It identifies no user, no prompt, no output, and no

---

[44] In *Cox*, the Supreme Court rejected the Fourth Circuit's prior "material contribution" theory as a viable basis for contributory liability. *See* 607 U.S. at 593; *see also id*. at 597–99, 601–02 (Sotomayor, J., concurring); *see*, *e.g.*, *Epidemic Sound, AB v. Meta Platforms, Inc.*, 2026 WL 2021347, at *32–39 (N.D. Cal. July 13, 2026) (applying post-*Cox* analysis to contributory copyright infringement claim). Any EVOX allegations that Runway "knowingly and materially contributed" to infringement are thus irrelevant to its contributory infringement claim. *See*, *e.g.*, Compl. ¶¶ 126, 127, 130–31.

[45] Compl. ¶ 126.

photograph that was allegedly reproduced. *See Tarantino v. Gawker Media, LLC*, No. 14-cv-603, 2014 WL 2434647, at *4 (C.D. Cal. Apr. 22, 2014) (dismissing contributory infringement claim where the plaintiff failed to allege "the identity of a single third-party infringer, the date, the time, or the details of a single instance of third-party infringement"). This generic allegation on information and belief fails to "nudge[] [the] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also, e.g.*, *Barnes v. Sanchez*, No. 25-cv-05901, 2026 WL 1912085, at *5 (N.D. Cal. July 2, 2026) (dismissing contributory infringement claim where allegations of third-party infringement "are entirely conclusory"); *Stabile*, 137 F. Supp. 3d at 1191 (same). Count Four fails for this reason alone.

**2. EVOX pleads no knowledge of specific acts of infringement.**

To establish that Runway is contributorily liable for copyright infringement, EVOX must also adequately plead that Runway "knew of the direct infringement" by another. *Luvdarts, LLC v. AT&T Mobility LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). "Actual knowledge of specific acts of infringement"—not merely "generalized knowledge. . . of the possibility of infringement"—is necessary. *Id.* (holding that conclusory allegations were "plainly insufficient" to satisfy the requirement).

The Complaint is bereft of ***any*** allegation that a user of Runway models generated any EVOX copyrighted images, much less that Runway knew of such actions. This alone is sufficient to dismiss the contributory infringement claim.

Merely alleging that models were trained on EVOX images is insufficient to plead actual knowledge of "specific acts of infringement" by others. *Concord Music Grp.*, 2025 WL 1487988, at *5 ("[T]he inclusion of protected lyrics in Claude's training corpus alone does not establish actual knowledge by Anthropic of third-party infringement."); *see also, e.g.*, *Robinson v. Binello*, 771 F. Supp. 3d 1114, 1125 (N.D. Cal. 2025) (dismissing contributory infringement claim because plaintiff "has not pleaded facts to show that [defendant] was aware" that recording

was copyrighted); *Michael Grecco Prods., Inc. v. TikTok, Inc.*, 829 F. Supp. 3d 793, 800 (C.D. Cal. 2025) (dismissing contributory infringement claim because plaintiff failed to allege "actual knowledge of specific acts of infringement").

Nor is it sufficient to allege that models ***could*** be used to create infringing images. *Concord Music Grp.*, 2025 WL 1487988, at *5 (dismissing contributory infringement claim where product "may be capable of substantial lawful as well as unlawful uses" because "contributory liability does not automatically follow where the technology arguably permits both"). Count Four fails for this reason as well.

**3. EVOX pleads no intent to facilitate infringement.**

Even if EVOX could identify direct infringement and Runway's actual knowledge of it, the claim would still fail because EVOX does not plead that Runway intended its tools to be used for infringement.

Contributory liability requires intent to bring about another party's infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 936–37 (2005); *Cox*, 607 U.S. at 592–93 ("The provider of a service is contributorily liable . . . only if it intended that the provided service be used for infringement."). In *Cox*, the Supreme Court clarified that the required intent exists "only if the party [a] induced the infringement or [b] the provided service is tailored to that infringement." 607 U.S. at 593. "[M]ere knowledge that a service will be used to infringe is insufficient," as is "failure to take affirmative steps to prevent infringement." *Id.* at 594.

EVOX identifies no advertisement, instruction, or communication in which Runway encouraged users to reproduce EVOX photographs. The only specific statements are attributed to ***Stability's*** former CEO—not any Runway employee or representative.[46] EVOX does not allege a single statement by Runway encouraging infringement, "such as by advertising an infringing use of its services." *Lee v. SBS Corp.*, No. 2:26-cv-03144, 2026 WL 2261023, at *5 (C.D. Cal. Aug. 5, 2026)

[46] *See* Compl. ¶ 131 (quoting Emad Mostaque).





6306490

(collecting cases and dismissing contributory copyright claim); *see also, e.g.*, *Barnes,* 2026 WL 1912085, at *6–7 (dismissing claim against YouTube because Plaintiff "does not allege that YouTube intended that its service be used for infringement . . . or that it induced infringement").

Alleged knowledge that LAION contained copyrighted images does not establish inducement. The Complaint alleges, at most, that Runway knew training data included EVOX photographs and that its tools were capable of producing infringing outputs.[47] But *Cox* holds that "mere knowledge" of infringing capability or use is not intent to cause infringement. 607 U.S. at 594. Distributing such a product, even for free, also does not constitute inducement. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 n.11 (9th Cir. 2007) (emphasis added) (holding defendant did not induce infringement because it "ha[d] not promoted the use of its [product] ***specifically to infringe copyrights***"); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745–46 (9th Cir. 2019) (same for "generally applicable tools").

EVOX's allegation that Runway distributed its tools "with the object of promoting" infringement[48] is nothing more than a "[t]hreadbare recital[] of the elements of a cause of action," which the Court must disregard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And EVOX's allegation that Runway failed to implement filtering[49] is also foreclosed by *Cox.* A failure to take "affirmative steps to prevent infringement" cannot establish contributory liability. 607 U.S. at 594. This is true even if Runway ***knew*** that its tools were being "use[d] . . . to make unauthorized copies of copyrighted material," which EVOX does not allege. *Id.*

The alternative route to contributory liability under *Cox*—for services "tailored to infringement"—is likewise unavailable. 607 U.S. at 593. "A service is tailored to infringement if it is 'not capable of 'substantial' or 'commercially

---

[47] Compl. ¶¶ 126, 129.

[48] Compl. ¶ 131.

[49] Compl. ¶ 131.

significant' noninfringing uses.'" *Id.* (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)); *SBS Corp.*, 2026 WL 2261023, at *5 (finding plaintiff failed to state a contributory infringement claim where it failed to allege that "YouTube's service is incapable of substantial or commercially significant noninfringing uses"). The Complaint does not allege that any Runway product meets this test.

On the contrary, EVOX concedes that Runway offers a "suite of products" that are used by filmmakers, videographers, and other creators for purposes wholly unrelated to EVOX's automotive photographs.[50] Nothing suggests that these tools are dedicated to generating copies of EVOX photographs, nor could EVOX plausibly allege they are. That is insufficient to show that the service is "tailored to infringement." *Grokster*, 545 U.S. at 937 ("[M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability" where the product has substantial non-infringing uses.); *see, e.g.*, *Art Records LLC v. YouTube LLC*, No. 25-cv-05069, 2026 WL 1669167, at *2 (N.D. Cal. June 9, 2026) (dismissing claim where "[i]t is undisputed that YouTube has many other uses beyond its ability to host infringing content").

Accordingly, Count Four should be dismissed.

**D. Count Five fails under the DMCA.**

EVOX advances two theories that Runway removed or altered CMI in violation of § 1202(b) of the DMCA. Its "Training Theory" alleges that Runway intentionally removed or altered CMI in the Copyrighted Photographs at some point during the model training process.[51] Its "Output Theory" alleges that, because Runway's models create "virtually identical copies of the Copyrighted Photographs without any of EVOX's CMI," Runway must have intentionally removed or altered that CMI.[52] Neither states a claim.

---

[50] Compl. ¶ 95.

[51] *See*, *e.g.*, Compl. ¶¶ 141–42, 145–47, 150.

[52] Compl. ¶¶ 141–42, 145–47, 150.

**1. EVOX's Output Theory is foreclosed as a matter of law.**

"To state a claim under section 1202, plaintiffs must . . . allege that defendants removed or altered CMI from copies of existing protected works; merely alleging that a similar or derivative work does not include the CMI, without facts showing its removal or alteration, is insufficient." *Doe v. GitHub*, 2026 WL 2728464, at *5.

*GitHub* controls here. In that case, the plaintiffs, who published open-source code on GitHub, alleged that defendants' Copilot AI tool "sometimes returns memorized training data" without "the source code's CMI, and that in doing so Copilot 'removed' or 'altered' CMI on copies of plaintiffs' protected work, in violation of section 1202(b)(1) and (3)." *See* 2026 WL 2728464, at *3 (cleaned up). The Ninth Circuit definitively rejected that theory, holding that § 1202(b) requires an "affirmative act [of removal or alteration] with respect to CMI connected to a work that already exists." *Id.* at *5. Because plaintiffs' allegations showed that Copilot was "best understood as learning from existing works and then creating new works based on that learning process," the Ninth Circuit held that even output substantially similar to existing GitHub code could not plausibly be characterized as a copy from which CMI had been removed or altered. *Id.* at *6–7.

As EVOX itself admits, Runway's AI models are "image ***generation*** tools" and "image ***generators***."[53] The numerous differences in the side-by-side comparisons in the Complaint[54]—as well as EVOX's repeated characterization of the models' outputs as "derivative works"[55]—confirm as much. That is, like Copilot, and in contrast to "a traditional search engine, which . . . retrieves and displays stored information," Runway's AI models learn from existing works and then create new works, not copies of pre-existing works stripped of CMI. *See*

[53] Compl. ¶¶ 67–68.

[54] *See* Compl. ¶¶ 79–80.

[55] *See*, *e.g.*, Compl. ¶ 142.

*GitHub*, 2026 WL 2728464, at *6–7. As in *GitHub*, the absence of EVOX CMI from Runway's outputs is not removal or alteration as a matter of law. *See id.* at *7. The Court should therefore dismiss EVOX's Output Theory without leave to amend. *See id.*; *Moreland Apartments Assocs. v. LP Equity LLC*, No. 5:19-cv-00744, 2019 WL 6771792, at *2 (N.D. Cal. Dec. 12, 2019) ("When a claim or portion of a claim is precluded as a matter of law, that claim may be dismissed pursuant to Rule 12(b).").

**2. EVOX's Training Theory fails because EVOX does not plausibly plead removal of CMI during training.**

*GitHub* did not decide the Training Theory because the plaintiffs there forfeited it. 2026 WL 2728464, at *3. EVOX's Training Theory must therefore be measured against § 1202(b)'s text. EVOX must plead an intentional removal or alteration by Runway and facts showing that Runway knew or reasonably should have known that its actions would "induce, enable, facilitate, or conceal an infringement" of a copyright. 17 U.S.C. § 1202(b); *see also, e.g.*, *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018).

EVOX does not plausibly allege that Runway removed or altered CMI during model training. The Complaint alleges only that "at some point" during training, Runway and other Defendants removed or altered CMI from training images.[56] It identifies no Runway actor or process that removed any CMI; no step when it was removed; and no image with altered or removed data.[57] Indeed, EVOX pleads no facts specific to Runway versus any other Defendant. Those generic allegations do not support a plausible inference that Runway removed or altered CMI. *See Twombly*, 550 U.S. at 570; *see also Steward v. West*, No. 13-cv-02449, 2013 WL 12120232, at *3 (C.D. Cal. Sep. 6, 2013) ("Courts in the Ninth Circuit have routinely held that undifferentiated pleading against multiple defendants is

[56] Compl. ¶ 142.

[57] *See* Compl. ¶¶ 138–51.

improper." (collecting cases)).

### 3. Both of EVOX's DMCA theories fail because EVOX does not plausibly plead double scienter.

EVOX also does not plausibly plead the DMCA's first scienter requirement—that Runway intentionally removed CMI—for either of its DMCA theories. Starting with EVOX's Training Theory, as a preliminary matter, because EVOX did not adequately allege any removal or alteration of CMI during model training, "there can be no knowledge of any removal or alteration." *See Falkner v. GM, LLC*, 393 F. Supp. 3d 927, 939 (C.D. Cal. 2018). The same is true for EVOX's Output Theory. Because the absence of EVOX CMI from Runway's outputs is not removal or alteration of CMI as a matter of law, it necessarily follows that Runway did not intentionally remove CMI from model outputs. *See GitHub*, 2026 WL 2728464, at *7. In addition, the allegation that the training process does not preserve CMI[58] is legally insufficient to establish intentional removal of CMI. *See Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (dismissing DMCA claim because plaintiffs' assertion that "[b]y design, the training process does not preserve any CMI" did not plausibly allege the DMCA's first scienter requirement).

Further, neither of EVOX's DMCA theories plausibly alleges that Runway knew or had reasonable grounds to know the alleged removal or alteration would "induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b)(1); *Stevens*, 899 F.3d at 673. EVOX merely recites the statute and assumes this second scienter requirement is satisfied because removing or altering CMI generally makes future infringement more likely.[59] But simply "identif[ying] . . . a general possibility that exists whenever CMI is removed . . . won't wash." *See Stevens*, 899 F.3d at 673. EVOX "must make an affirmative showing, such as by demonstrating

---

[58] *See* Compl. ¶¶ 141–42, 146.

[59] *See*, *e.g.*, Compl. ¶¶ 147, 150.

a past 'pattern of conduct' or 'modus operandi,' that [Runway] was aware or had reasonable grounds to be aware of the probable future impact of its actions." *See id.* at 674.

EVOX makes no such showing, instead "rel[ying] on the same allegations regarding [Runway's] training process, and the same underlying theory that [the] training process imbued [Runway] with knowledge that the removal of CMI would induce third party infringement." *See Concord Music Grp.*, 2025 WL 1487988, at *7. Those allegations are far too conclusory to withstand dismissal. *See id.*; *see also Tremblay*, 716 F. Supp. 3d at 779 (rejecting theory that OpenAI's alleged removal of CMI from undisclosed books used to train ChatGPT knowingly enabled infringement).

EVOX cannot convert its copyright infringement claims into a DMCA claim by asserting that CMI must have disappeared somewhere in the process. Parties may not use "the DMCA [to] supplant traditional copyright protections and subject defendants to potentially ruinous liability under the DMCA's enhanced statutory damages." *See GitHub*, 2026 WL 2728464, at *7. That is precisely what EVOX seeks to do. As in *GitHub*, the Court should "decline [EVOX's] invitation to transform run-of-the-mill copyright-infringement claims into DMCA claims." *See id.* Count Five should be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Counts One, Two, Four, and Five against Runway without leave to amend.

Dated: October 12, 2026 KEKER, VAN NEST & PETERS LLP

By: */s/ Paven Malhotra*
DAVID SILBERT
PAVEN MALHOTRA
BAILEY W. HEAPS
JULIA L. GREENBERG

Attorneys for Defendant
RUNWAY AI, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Runway AI, Inc., certifies that this brief contains 6,112 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 12, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Paven Malhotra*

DAVID SILBERT
PAVEN MALHOTRA
BAILEY W. HEAPS
JULIA L. GREENBERG

Attorneys for Defendant
RUNWAY AI, INC.