GINA L. DURHAM (Bar No. 295910)
*gina.durham@us.dlapiper.com*
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel: 415.836.2500

RACHEL E. FERTIG (admitted *pro hac vice*)
*rachel.fertig@us.dlapiper.com*
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: 202.799.4429

ERIC C. HALL (Bar No. 354404)
*eric.hall@us.dlapiper.com*
RUBY A. STRASSMAN (Bar No. 346601)
*ruby.strassman@us.dlapiper.com*
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4735
Tel: 310.595.3000

*Attorneys for Defendant*
DEVIANTART, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EVOX PRODUCTIONS, LLC,

*Plaintiff,*

v.

STABILITY AI LTD.; STABILITY AI, INC.; RUNWAY AI, INC.; HUGGING FACE, INC.; and DEVIANTART, INC.,

*Defendants.*

Case No. 2:26-cv-07201-CAS(RAOx)

**DEFENDANT DEVIANTART, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: January 11, 2027
Time: 10:00 a.m.
Dept: Courtroom 8D, 8th Floor
Judge: Hon. Christina A. Snyder

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 11, 2027 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Christina A. Snyder, United States District Judge, Central District of California, located at the Felicitas and Gonzalo Mendez United States Courthouse, Courtroom 8D, 8th Floor, Los Angeles, California 90012, Defendant DEVIANTART, INC. ("DeviantArt") will and hereby does move under Federal Rules of Civil Procedure 12(b)(6) and 8(a)(2) for an order dismissing Counts One, Two, Four, and Five of Plaintiff EVOX PRODUCTIONS, LLC's ("Plaintiff" or "EVOX") complaint, Dkt. No. 1 (the "Complaint") against DeviantArt, without leave to amend. DeviantArt respectfully requests oral argument on this Motion.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the supporting Declaration of Eric C. Hall ("Hall Decl.") and its exhibits, the record in this action, and any argument the Court may permit at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 1, 2026. Counsel could not resolve the issues addressed in this Motion. EVOX contends it has sufficiently alleged its claims of direct and contributory copyright infringement and its DMCA claims against DeviantArt. As detailed in this Motion, DeviantArt disagrees.

Dated: October 12, 2026

**DLA PIPER LLP (US)**

By: /s/ *Gina L. Durham*
GINA L. DURHAM

Attorneys for Defendant
DEVIANTART, INC.

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. FACTUAL ALLEGATIONS ........ 2
A. EVOX'S Photos of Cars on a White Background. ........ 2
B. Creation and Release of AI Model "Stable Diffusion" in 2022 ........ 3
C. DeviantArt Launches DreamUp Using "Stable Diffusion" in 2022. ........ 4
D. EVOX Waits Until 2026 to File This Lawsuit. ........ 5
III. LEGAL STANDARD ........ 5
IV. ARGUMENT ........ 6
A. EVOX's Undifferentiated Allegations Violate Rule 8(a)(2). ........ 6
B. EVOX's Claims Against DeviantArt All Fail on the Merits. ........ 7
1. EVOX's Direct Copyright Infringement Claim for Unauthorized AI Training Fails (Count One). ........ 7
2. EVOX's Direct Copyright Infringement Claim for Unauthorized AI-Generated Images from DreamUp Fails (Count Two). ........ 9
3. EVOX's Contributory Infringement Claim Fails (Count Four). ........ 17
4. EVOX's DMCA Claims Fail (Count Five). ........ 19
C. EVOX's Claims in Count One and Count Five Are Time-Barred. ........ 21
V. CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595 (9th Cir. 2014) .......... 6, 24

*Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853 (N.D. Cal. 2023) .......... 7, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5, 9, 19

*Beaulier v. Meta Platforms, Inc.*, No. 26-cv-2632, 2026 WL 2521848 (N.D. Cal. Aug. 26, 2026) .......... 20

*Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435 (9th Cir. 2020) .......... 5

*Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583 (2026) .......... 1, 18, 19

*Doe 1 v. GitHub, Inc.*, --- F.4th ---, 2026 WL 2728464 (9th Cir. 2026) .......... 20, 21

*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003) .......... 13

*EVOX Prods. LLC v. Kayak Software Corp.*, No. 15-cv-5053, 2017 WL 5634856 (C.D. Cal. Jan. 20, 2017) .......... 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .......... 8, 10

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019) .......... 10, 12

*Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072 (9th Cir. 2006) .......... 17

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026)........................................................................6

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)........................................................................5

*Goldberg v. Cameron*,
482 F. Supp. 2d 1136 (N.D. Cal. 2007)........................................................24

*Gray v. Perry*,
No. 15-cv-5642, 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020)..................12, 13

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-3417, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .......................17

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)..........................................................................5

*Klauber Bros., Inc. v. P.J. Salvage*,
No. 18-cv-5470, 2018 WL 6984817 (C.D. Cal. Oct. 30, 2018).........................17

*Lee v. SBS Corp.*,
No. 26-cv-3144, 2026 WL 2261023 (C.D. Cal. Aug. 5, 2026)..........................18

*Lynwood Invs. Cy Ltd. v. Konovalov*,
No. 20-cv-3778, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021)........................23

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010)........................................................................17

*Media Rights Techs., Inc. v. Microsoft Corp.*,
922 F.3d 1014 (9th Cir. 2019)......................................................................21

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) .....................................................................................18

*Michael Grecco Prods., Inc. v. BDG Media Inc.*,
No. 19-cv-4716, 2020 WL 3957565 (C.D. Cal. Feb. 26, 2020), *aff'd in part, rev'd in part and remanded*, 834 F. App'x 353 (9th Cir. 2021)..........................................................................................22

*Mindlab Media, LLC v. LWRC Int'l, LLC*,
No. 11-cv-3405, 2012 WL 386695 (C.D. Cal. Feb. 6, 2012) ...............................6

*In re Napster, Inc. Copyright Litig.*,
No. 04-cv-3004, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005) ............................ 21

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
971 F.3d 1042 (9th Cir. 2020) ............................................................ 22

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) ............................................................ 8, 10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) ............................................................ 22

*Skidmore ex rel. Randy Craig Wolfe Trust v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ............................................................ 12, 13

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) ............................................................ 9

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ............................................................ 12, 13, 17

*Sebastian Brown Prods., LLC v. Muzooka, Inc.*,
143 F. Supp. 3d 1026 (N.D. Cal. 2015) ............................................................ 6

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013) ............................................................ 21

*Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*,
39 F.4th 1236 (9th Cir. 2022) ............................................................ 22

*Stross v. Twitter, Inc.*,
No. 21-cv-8360, 2022 WL 1843142 (C.D. Cal. Feb. 28, 2022) ............................ 9

*Tanzer v. Adobe Inc.*,
No. 26-cv-4712, 2026 WL 2446787 (N.D. Cal. Aug. 20, 2026) ............................ 8

*VHT, Inc. v. Zillow Grp., Inc.*,
918 F.3d 723 (9th Cir. 2019) ............................................................ 10

*Woodland v. Hill*,
136 F.4th 1199 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 1774 (2026) ........... 8, 12

*Zella v. E.W. Scripps Co.*,
529 F. Supp. 2d 1124 (C.D. Cal. 2007) .......... 17

**Statutes**

17 U.S.C. § 102 .......... 12

17 U.S.C. § 411 .......... 10

17 U.S.C. § 507 .......... 21

17 U.S.C. § 1202 .......... 19, 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

EVOX's claims against DeviantArt fail because its allegations are too little, too late. Too little, because EVOX has not alleged—and cannot plausibly allege—any of its four claims against DeviantArt. And too late, because EVOX's training-related claims are premised on publicly reported information and actions from 2022, which are beyond the Copyright Act's three-year statute of limitations.

In Count One, EVOX seeks relief for direct copyright infringement for allegedly copying EVOX's car photos to train AI models. But there are zero supporting factual allegations with respect to DeviantArt. To the contrary, EVOX alleges that DeviantArt "offers a subscription-based AI image generation service called 'DreamUp' that was built upon the Stable Diffusion model," Compl. ¶¶ 70, 96, which was allegedly trained by parties other than DeviantArt, *id.* ¶¶ 55, 57, 128, and that DeviantArt "did not fine tune SD [Stable Diffusion] at all." *Id.* ¶ 71. Simply put, EVOX merely alleges DeviantArt is a downstream user of the pre-trained Stable Diffusion model and did not train that model.

Count Two's direct infringement claim, regarding alleged DreamUp outputs, fares no better. The Complaint's image comparisons expose that EVOX is attempting to assert a claim in the uncopyrightable idea of car product shots. This is contrary to law. To infringe any protectable expression, the outputs must be "virtually identical" to EVOX's photos. EVOX's examples all fail this test.

The contributory infringement claim in Count Four fails under *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583 (2026). EVOX has not and cannot plausibly allege that DeviantArt intended its DreamUp service to be used to infringe EVOX's photos.

In Count Five, EVOX cannot plausibly allege facts establishing the removal of copyright management information ("CMI") or the scienter that the Digital

Millennium Copyright Act ("DMCA") requires. EVOX alleges *third parties* removed its CMI during the training of Stable Diffusion—prior to DeviantArt's alleged incorporation of that model into DreamUp. DeviantArt thus could not have intended to remove what EVOX alleges was already gone.

The Court should dismiss these claims with prejudice because any amendment would be futile given the facts already alleged and the applicable statute of limitations.

## II. FACTUAL ALLEGATIONS

### A. EVOX's Photos of Cars on a White Background.

EVOX alleges it owns copyrights in over one million photos of "virtually every commercially available automotive vehicle make and model sold in the United States since model year 2000." Compl. ¶¶ 17-18. According to EVOX, "Defendants" have infringed the 103,957 federally registered car photos in Exhibits A-D ("Copyrighted Photographs"). *Id.* ¶¶ 18, 44.

EVOX alleges "its entire library of Copyrighted Photographs" is available for automotive industry customers, such as Kelley Blue Book, for display-only use online using a secure API that EVOX monitors "to detect and prevent unauthorized access." *Id.* ¶¶ 31, 36. EVOX allegedly includes its name on each Copyrighted Photograph and in the metadata, *id.* ¶¶ 26, 31, 140, and requires licensees to retain EVOX's name on its photos. *Id.* ¶ 45.

EVOX allegedly captures "the vehicle's shape in photos without any color contamination" against a white background using "a specially designed photography studio and advanced editing techniques." Compl. ¶¶ 21-22. It admits it does not own any rights in the cars depicted, *id.* ¶ 79, but asserts that "each and every Copyrighted Photograph" is "recognizable as distinctively EVOX's" because of the "combination, selection, and arrangement of" 11 features, *id.* ¶ 24, namely:

a. The composition and framing of the vehicle, including the

precise positioning and angle of the vehicle on the turntable;

b. The degree to which the vehicle's wheels are turned;
c. The selection of camera lens, focal length, and focus;
d. The distance of the vehicle from the camera;
e. The height of the camera relative to the vehicle at the top of the vehicle's wheel wells;
f. The use, color, and position of overhead lighting;
g. The placement of the vehicle against the white cyclorama background;
h. The creation of soft-edge drop shadows underneath the vehicle;
i. The lack of any noticeable reflection on the windshield and side windows to allow the interior of the vehicle to stand out;
j. The position and brightness of the sheen on the vehicle's black rubber tires based on the positioning of the vehicle and the white cyclorama; and
k. The use of gray walls around the turntable that are shaped to simulate a horizon line to create soft gray reflections and brighter highlights on the vehicle's side panels to define its shape without adding color contamination.

*Id.* ¶ 23; *see also id.* ¶ 77 ("EVOX does not claim a monopoly over any single unprotectable element in isolation . . . but rather over the original combination, selection, coordination, and arrangement of these creative choices"); *id.* ¶ 78.

### B. Creation and Release of AI Model "Stable Diffusion" in 2022.

According to EVOX, in October 2022, a German nonprofit called LAION[1] released the LAION-5B image dataset for free to the public, including a subset of "2 billion English-language image-caption pairs" (the "LAION-2B-en dataset"). Compl. ¶¶ 37-40. EVOX admits "the LAION datasets contain[] only URLs," not copies of photos. *Id.* ¶ 51; *see also id.* ¶ 39 & n.4 (citing the LAION-5B Paper, dated October 16, 2022). EVOX asserts that "[t]he LAION-2B-en dataset contains URL

[1] For convenience, this Motion adopts the defined terms set forth in the Complaint. Unless otherwise indicated, all capitalized terms used herein carry the same meanings as defined in the Complaint.

links to at least 103,957 Copyrighted Photographs—all hosted on websites belonging to third party automotive companies—as documented by EVOX in a search of the LAION-2B-en dataset." *Id.* ¶ 44; *id.* at Ex. B. EVOX further admits that "[m]any of the 103,957 URL links" include EVOX's filename. *Id.* ¶¶ 46-47, 49.

EVOX alleges that the Stability Entities trained Stable Diffusion on the Copyrighted Photographs in the LAION datasets and released Stable Diffusion in August 2022. *Id.* ¶¶ 51, 54; *see also id.* ¶¶ 68-69. The Complaint has no factual allegations that DeviantArt assisted with the training of Stable Diffusion. Rather, EVOX alleges "Stable Diffusion was developed through a collaboration between the Stability Entities, Runway," researchers at a German university, *id.* ¶¶ 55, 128, and LAION, *id.* ¶ 57.

### C. DeviantArt Launches DreamUp Using "Stable Diffusion" in 2022.

DeviantArt, which EVOX admits is an "online community for artists to post and create artwork," only enters the picture in November 2022, when it allegedly launched its "subscription-based AI image generation service called 'DreamUp,'" which EVOX alleges "'makes use of Stable Diffusion, a third-party AI model.'" *Id.* ¶ 70 & n.15 (quoting DeviantArt's press release dated Nov. 11, 2022); *id.* ¶ 96. Critically, EVOX admits that DeviantArt did not "fine tune" Stable Diffusion, quoting DeviantArt's CTO: "'we did not fine tune SD [Stable Diffusion] at all, so there aren't novel weights to share.'" *Id.* ¶ 71. These admissions contradict the Complaint's undifferentiated assertions that "Defendants" downloaded the Copyrighted Photographs from URLs in the LAION datasets to train their AI models. *See id.* ¶¶ 52, 53, 59, 82, 93, 98, 109, 134, 139, 141. EVOX did not plead any facts showing that DeviantArt ever accessed the LAION-2B-en dataset or engaged in any training of Stable Diffusion. Rather, EVOX's factual allegations make DeviantArt merely a downstream user of the pre-trained Stable Diffusion model.

**D. EVOX Waits Until 2026 to File This Lawsuit.**

Despite relying on *public* datasets (linking to websites EVOX purportedly monitors for unauthorized access), *public* AI models, *public* statements, and *public* research papers—*all from January 2023 or earlier*—EVOX generically asserts it "did not discover, and in the exercise of reasonable diligence could not have discovered, Defendants' unauthorized reproduction and use of the Copyrighted Photographs until July 2023." *Id.* ¶ 74. Zero factual allegations support this assertion.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court need not accept as true conclusory allegations or legal characterizations, nor draw unreasonable inferences. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). In evaluating a Rule 12(b)(6) motion, however, a court may consider materials referenced in the complaint and take judicial notice of matters of public record. *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)," so long as those assumptions do not "only serve to dispute facts stated in a well-pleaded complaint.").[2]

[2] The Court may consider DeviantArt's November 2022 press release, the LAION-5B Paper, and the *Carlini* paper under the incorporation-by-reference doctrine

Rule 8(a)(2) requires that a complaint identify "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" constitutes a "shotgun pleading," *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026), which is properly dismissed under Rule 8(a)(2), *id.* at 1289. Courts may deny leave to amend where amendment would be "futile." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).

## IV. ARGUMENT

### A. EVOX's Undifferentiated Allegations Violate Rule 8(a)(2).

Counts One and Five should be dismissed because EVOX impermissibly seeks to impose liability on DeviantArt via undifferentiated allegations against "Defendants" for conduct that EVOX admits DeviantArt had nothing to do with.

"[A] complaint which lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)," and should be dismissed. *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (cleaned up); *Gibson*, 165 F.4th at 1289; *see also Mindlab Media, LLC v. LWRC Int'l, LLC*, No. 11-cv-3405, 2012 WL 386695, at *4 (C.D. Cal. Feb. 6, 2012) (Snyder, J.) (dismissing copyright claims for failure to allege defendant's specific role in infringement).

Here, the Complaint repeatedly lumps some or all of the defendants together as "Defendants," without identifying which defendant allegedly committed which act. *See, e.g.*, Compl. ¶¶ 93, 97-98, 109, 126. These undifferentiated allegations violate Rule 8(a)(2) and should be disregarded.

In Count One (EVOX's unauthorized AI training claim), the factual

---

because the Complaint relies upon them, Compl. ¶¶ 39 & n.4, 51, 61 & n.8, 70 & n.15, to support EVOX's claims.

allegations specific to DeviantArt vitiate the allegations lumping DeviantArt in with "Defendants." EVOX alleges that DeviantArt's DreamUp service "makes use of Stable Diffusion, a third-party AI model," *id.* ¶ 70, that entities other than DeviantArt trained Stable Diffusion, *see id.* ¶¶ 55, 57, 128, and that DeviantArt did not "fine tune" Stable Diffusion, *id.* ¶ 71. There are no factual allegations that DreamUp uses any AI model other than Stable Diffusion. Thus, there is no basis to infer that DeviantArt engaged in unauthorized AI training.

Count Five (EVOX's DMCA claim) fails against DeviantArt for the same reason the claim failed against DeviantArt in *Andersen v. Stability AI Ltd.*: the Complaint's reliance on undifferentiated speculation that the Defendants removed CMI during AI training and generation of outputs. 700 F. Supp. 3d 853, 872 (N.D. Cal. 2023) (dismissing undifferentiated DMCA claims that lacked plausible facts supporting DMCA liability specific to each defendant); *see* Compl. ¶¶ 67, 109, 129, 142, 145-47, 150. As EVOX does not "identify with specificity the theory of DMCA liability for" DeviantArt—nor any "plausible facts in support"—EVOX fails to state a claim against DeviantArt. *Andersen*, 700 F. Supp. 3d at 872.

**B. EVOX's Claims Against DeviantArt All Fail on the Merits.**

*1. EVOX's Direct Copyright Infringement Claim for Unauthorized AI Training Fails (Count One).*

Count One should be dismissed against DeviantArt because the Complaint contains zero facts that DeviantArt trained Stable Diffusion—the only AI model that DeviantArt allegedly uses for its DreamUp service. Compl. ¶¶ 70-71.

To state a claim for copyright infringement, a plaintiff must allege facts that, if true, would prove both: (1) ownership of a valid copyright and (2) that the defendant copied original aspects of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348, 361 (1991).

Here, EVOX alleges ownership of valid copyrights in the Copyrighted

Photographs, Compl. ¶ 91, but more than 950 registration certificates in Exhibit D contradict such allegation because they identify a party other than "EVOX Productions, LLC" as the "copyright claimant," i.e., the copyright owner. The Complaint lacks allegations explaining how or why EVOX owns these registrations, which are asserted to cover more than 13,000 photos in Exhibit B.

Regardless of the deficient ownership allegations, the alleged unauthorized copying relevant to Count One consisted of downloading the Copyrighted Photographs from LAION dataset URLs "to train" AI models. *Id.* ¶¶ 52-53, 93, 97-98. This claim fails because the Complaint contains zero facts that DeviantArt (1) accessed the Copyrighted Photographs from the LAION-2B-en dataset (the only dataset alleged to contain URLs to the Copyrighted Photographs) or (2) trained Stable Diffusion at all. *See Woodland v. Hill*, 136 F.4th 1199, 1210 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 1774 (2026) (affirming dismissal for lack of plausible allegations of access); *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (direct infringement attaches only to party who is the "proximate caus[e]" of the challenged work's creation); *Tanzer v. Adobe Inc.*, No. 26-cv-4712, 2026 WL 2446787, at *3-4 (N.D. Cal. Aug. 20, 2026) (dismissing infringement claim where plaintiff's allegation that defendant trained AI model on her copyrighted works from a particular dataset was a "bare conclusion unsupported by factual allegations").

Rather, EVOX alleges that "Stable Diffusion was developed through a collaboration between the Stability Entities, Runway, and researchers at Ludwig Maximilian University," Compl. ¶¶ 55, 128, as well as LAION, *id.* ¶ 57. EVOX does not allege that DeviantArt played any role in Stable Diffusion's development. The Complaint asserts the opposite. EVOX admits that DeviantArt did not train its version of Stable Diffusion, *i.e.*, "fine tune" it, quoting DeviantArt's CTO, who allegedly "said of DreamUp: 'we did not fine tune SD [Stable Diffusion] at all, so there aren't novel weights to share.'" *Id.* ¶ 71 (brackets in original).

Count One should be dismissed with prejudice because any attempt to salvage this claim against DeviantArt would require contradictory facts that EVOX cannot assert in an amendment. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

*2. EVOX's Direct Copyright Infringement Claim for Unauthorized AI-Generated Images from DreamUp Fails (Count Two).*

Count Two should be dismissed for multiple independent reasons.

*First*, EVOX includes zero factual support to demonstrate whether or how the alleged DeviantArt outputs identified at paragraphs 79 and 80 of the Complaint were generated using DreamUp. *See Stross v. Twitter, Inc.*, No. 21-cv-8360, 2022 WL 1843142, at *3 (C.D. Cal. Feb. 28, 2022) (dismissing for plaintiff's failure to "plead any facts giving rise to a reasonable inference that his photographs were ever copied, re-posted, or selected for inclusion by [Defendant]"). The Complaint does not allege that any DreamUp user generated the images at issue without permission from EVOX, does not present any URLs that would permit an inference of use of DreamUp, and does not disclose whether the prompts were simple requests for a particular car or detailed instructions to generate a particular car, at a particular angle, against a white background. At most, EVOX labels the example images "DeviantArt" and alleges they were "produced by . . . DeviantArt's . . . AI image generating tools." Compl. ¶ 79. But the Court need not accept conclusions that EVOX fails to support with factual allegations. *Iqbal*, 556 U.S. at 679.

*Second*, EVOX does not allege that DeviantArt—as opposed to any DreamUp user—engaged in the "volitional conduct" that generated each allegedly infringing output. The Complaint admits that DreamUp generates images "in response to prompts from the users." Compl. ¶ 108. It is the user who selects the subject matter of the output, writes the prompt to create it, and initiates the automated generation of it. Where, as here, the alleged infringement results from a user's interaction with an

automated system, direct infringement attaches, if at all, to the *user* who causes the system to generate the output, not to the service provider. *See Giganews*, 847 F.3d at 666-69 (collecting cases); *accord VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) ("[A]ctivities . . . such as 'automatic copying, storage, and transmission of copyrighted materials, when instigated by others'" are not sufficient).

*Third*, even assuming the outputs were generated using DreamUp, EVOX fails to plausibly allege (1) copyright registrations for the allegedly infringed photos or (2) substantial similarity between DreamUp outputs and any Copyrighted Photographs. EVOX therefore fails to state either element of a copyright infringement claim. *Feist*, 499 U.S. at 348, 361.

Regarding registration, a plaintiff must possess a valid copyright registration for the allegedly infringed work at the time the Complaint is filed. 17 U.S.C. § 411(a); *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). To support the plausibility of its output infringement claim, EVOX includes side-by-side comparisons of six EVOX car photos and alleged outputs "produced by each of the Stability Entities', Runway's, and DeviantArt's respective AI image generating tools." Compl. ¶¶ 79-80. But none of these handpicked example photos appear to be listed within the copyright registrations asserted in the Complaint. *See id.* ¶ 18 (alleging that a "complete list of EVOX's copyrighted photographs which Defendants have infringed are identified by title and copyright registration number in the attached Exhibits B and C").[3] Specifically, EVOX alleges infringement of:

- An "EVOX photograph of a 2021 Ford Explorer," but the only 2021 Ford Explorer photo listed in Exhibit B is a work titled "VIF14888 2021 Ford Explorer ***ST*** Equipment Group 400A/Rapid ***Red*** . . . ," *see* Compl. Ex. B at Row 10385 (emphasis supplied); the image in the Complaint is white, not red,

[3] Exhibit C is allegedly a subset of 225 of the registered copyrights in Exhibit B. Compl. ¶ 115.

and lacks the distinctive ST grille badge and red brake calipers, according to EVOX's own photos. *Compare* Compl. ¶ 79 *with* Hall Decl. Ex. 1.

- An "EVOX photograph of a 2021 Audi Sportback Premium," but "Audi Sportback" is not in the title of any work in Exhibit B. Compl. ¶ 80. Even assuming EVOX meant "Audi ***A5*** Sportback," 2018 is the latest model year of any Audi A5 Sportback photo in Exhibit B. *Id.* Ex. B at Row 80916.
- An "EVOX photograph of a 2021 Lexus UX 200," *id.* ¶ 80, but the only 2021 Lexus photo in Exhibit B is a different model, the IS 350 F Sport, *id.* Ex. B at Row 103786.
- An "EVOX photograph of a 2021 BMW Z4 Roadster," *id.* ¶ 80, but 2020 is the latest model year of any BMW Z4 photo in Exhibit B, *id.* Ex. B at Row 102874.
- An "EVOX photograph of a 2021 Nissan Leaf S Plus," *id.* ¶ 80, but 2020 is the latest model year of any Nissan LEAF photo in Exhibit B, *id.* Ex. B at Row 103415.
- An "EVOX photograph of a 2021 Toyota Tacoma SR," *id.* ¶ 80, but 2020 is the latest model year of any Toyota Tacoma photo in Exhibit B, *id.* Ex. B at Row 103529.

Accordingly, Count Two fails because EVOX has not plausibly alleged valid copyright registrations for any of the car photos allegedly infringed by DreamUp outputs. *See Fourth Estate*, 586 U.S. at 301. Because the six asserted photos do not appear within the closed list of Copyrighted Photographs, EVOX also fails to allege that DeviantArt accessed these car photos—another independent ground to dismiss Count Two. *See Woodland*, 136 F.4th at 1210.

Even if there were sufficient allegations of ownership and access, EVOX still fails to show DreamUp outputs copy protectable expression from identified EVOX photos. At base, EVOX's output claim seeks to prevent DeviantArt from offering AI

services that allow the public to generate images of cars—that EVOX claims no rights in—on a white background. This is contrary to law. Ideas and concepts are not protectable. 17 U.S.C. § 102(b). As such, copyright does not protect general "artistic style," such as the idea of a car shown at a three-quarter angle against a white background. *See* Compl. ¶¶ 77-79; *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) ("[A] defendant incurs no liability if he copies only the 'ideas' or 'concepts' used in the plaintiff's work.").

Further, EVOX's image comparisons fail as a matter of law under the extrinsic test to show substantial similarity between EVOX's photos and the alleged DeviantArt outputs. *See Gray v. Perry*, No. 15-cv-5642, 2020 WL 1275221, at *4 (C.D. Cal. Mar. 16, 2020) (Snyder, J.) (granting JMOL for non-infringement, explaining that the "extrinsic test requires the Court to determine whether any elements of the [plaintiff's work] are protected and objectively similar to corresponding and allegedly infringing elements of [the defendant's work]"). "[O]nly substantial similarity in protectable expression may constitute actionable copying that results in infringement liability." *Skidmore ex rel. Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Protectable expression in photos is limited to "the photographer's selection and arrangement of the photo's otherwise unprotected elements," such as an "original . . . combination of subject matter, pose, camera angle, etc.," but "not any of the individual elements standing alone." *Rentmeester*, 883 F.3d at 1119; Compl. ¶ 77 (limiting copyright claim to "the original combination, selection, coordination, and arrangement of [its] creative choices"); *id.* ¶ 78 (same). Such protectable expression is "thin" for commercial product photos, such as EVOX's car photos, "because the range of creative choices available in selecting and arranging the photo's elements is quite limited." *Rentmeester*, 883 F.3d at 1120; *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765-66 (9th Cir. 2003) (affirming non-infringement for product shot applying

"virtually identical copying" standard); *EVOX Prods. LLC v. Kayak Software Corp.*, No. 15-cv-5053, 2017 WL 5634856, at *10 (C.D. Cal. Jan. 20, 2017) (holding that EVOX's car photos receive only "a 'thin' copyright that protects them from virtual identical copying"). As this Court and the Ninth Circuit have recognized, "for works where there is a narrow range of available creative choices, the defendant's work would necessarily have to be 'virtually identical' to the plaintiff's work in order to be substantially similar." *Skidmore*, 952 F.3d at 1076 n.13; *accord Gray*, 2020 WL 1275221, at *3, *11-13.

As in *Gray v. Perry*, there are multiple "objective distinctions that, as a matter of law, negate liability" as applied to DeviantArt's alleged outputs in this case. *Gray*, 2020 WL 1275221, at *12; *see also Rentmeester*, 883 F.3d at 1120 (explaining that "subtle differences in lighting, camera angle, and background were sufficient to render the defendant's otherwise similar-looking photos of the same [vodka] bottle non-infringing" in *Ets-Hokin*). In *Ets-Hokin*, "[t]he only constant [was] the [product] itself." 323 F.3d at 766. Here, not even the car is constant. The following comparisons identify some of these objective distinctions:

<table>
<tr><th>Alleged EVOX Photograph</th><th>Alleged DeviantArt Output</th></tr>
<tr><td></td><td></td></tr>
<tr><td colspan="2">
<ul>
<li>Output car is different; it has, e.g., different wheels, front fascia, grille texture, turn signals, rocker panels, a metallic skid plate, no visible fuel door</li>
<li>Closer “distance” of “camera” forces different front-to-rear perspective</li>
<li>More acute rotation “angle” obscures passenger-side headlight and mirror</li>
<li>“[H]eight of the camera,” lower than wheel wells, obscures view of hood</li>
<li>“[D]rop shadow” is lighter with uneven edges</li>
<li>Windshield has “noticeable reflection” obscuring view of interior</li>
<li>Different “gray reflections” depict different “shape” in “side panels”</li>
</ul>
</td></tr>
<tr><th>Alleged EVOX Photograph</th><th>Alleged DeviantArt Output</th></tr>
<tr><td></td><td></td></tr>
<tr><td colspan="2">
<ul>
<li>Output car is different; it is a hatchback not a “sportback,” with, e.g., different wheels, headlights, fascia, badging, turn signals, grille texture, and has a license plate holder and roof rails, but no proximity sensors</li>
<li>Rotation “angle” is more acute, revealing driver-side taillight</li>
<li>Front wheels are “turned,” depicting more brake disc within front wheel</li>
<li>“[H]eight of the camera” is higher than wheel wells, revealing more interior</li>
<li>“[D]rop shadow” is lighter and reflects tires and undercarriage</li>
<li>Windshield has “noticeable reflection” obscuring interior view</li>
</ul>
</td></tr>
</table>

<table>
<tr><th>Alleged EVOX Photograph</th><th>Alleged DeviantArt Output</th></tr>
<tr><td></td><td></td></tr>
<tr><td colspan="2">• Output car is different; it has, e.g., different wheels, headlights, fascia, badging, seats, wheel arches, and a European license plate, and rear spoiler<br>• Rotation “angle” is less acute, revealing more passenger-side headlight<br>• “[H]eight of the camera” is higher than wheel wells, revealing more interior<br>• Different “reflections” reveal different “shape” in “side panels”</td></tr>
<tr><th>Alleged EVOX Photograph</th><th>Alleged DeviantArt Output</th></tr>
<tr><td></td><td></td></tr>
<tr><td colspan="2">• Output car is different; it has, e.g., different brake calipers, grille design, front fascia, panel gaps, turn signals, side mirrors, A-pillar colors, seats (both in color and number), and has a European license plate holder.<br>• Much taller “height of the camera” results in different “framing”<br>• Different perceived exposure obscures contours in body panel “reflections”<br>• “[D]rop shadow” appears lighter with uneven edges</td></tr>
</table>

<table>
<tr><th>Alleged EVOX Photograph</th><th>Alleged DeviantArt Output</th></tr>
<tr><td></td><td></td></tr>
<tr><td colspan="2">
• Output car is different; it has, e.g., different wheels, headlights, front fascia, badging, door handles, panel gaps, side mirrors, seats, and lacks a tow hook<br>
• Lower “height of the camera” obscures roof<br>
• More acute rotation “angle” reveals less passenger-side headlight<br>
• Different perceived exposure obscures contours in body panel “reflections”<br>
• “[D]rop shadow” is narrower with uneven edges
</td></tr>
</table>

<table>
<tr><th>Alleged EVOX Photograph</th><th>Alleged DeviantArt Output</th></tr>
<tr><td></td><td></td></tr>
<tr><td colspan="2">
• Output car is different; it has, e.g., different wheels, front fascia, grille texture, rocker panels, a metallic skid plate, white wheel arches, and lacks mud flaps<br>
• Closer “distance” of “camera” forces different front-to-rear perspective<br>
• Rotation “angle” is more acute, obscuring passenger-side headlight and mirror<br>
• Taller “height of the camera” reveals more hood and less undercarriage<br>
• “[D]rop shadow” is lighter and uneven, reflecting tires and undercarriage<br>
• Greater windshield/window transparency reveals more interior<br>
• Reflections on “side panels” highlight different contours
</td></tr>
</table>

Simply put, none of the alleged DeviantArt outputs are "virtually identical" to the EVOX photos as a matter of law. Accordingly, EVOX fails to plausibly allege any factual basis for its output claim and Count Two should thus be dismissed with prejudice. *See Rentmeester*, 883 F.3d at 1125 (affirming dismissal with prejudice of infringement claim); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023) (dismissing generic claim that all outputs from AI model were infringing derivatives of alleged training data); *Klauber Bros., Inc. v. P.J. Salvage*, No. 18-cv-5470, 2018 WL 6984817, at *5 (C.D. Cal. Oct. 30, 2018) (dismissing infringement claims against multiple defendants, with collectively 20 allegedly infringing products, where single "exemplar" in complaint failed to demonstrate substantial similarity); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130-32, 1138-39 (C.D. Cal. 2007) (dismissing with prejudice based on selected example episodes of allegedly infringing TV series) (citing *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072 (9th Cir. 2006)).

*3. EVOX's Contributory Infringement Claim Fails (Count Four).*

EVOX's contributory infringement claim fails because: (1) it has not plausibly alleged any underlying direct infringement by DreamUp users and (2) it cannot plausibly allege DeviantArt intended to facilitate direct infringement of the Copyrighted Photographs via its DreamUp service.

*First*, "[t]o establish secondary infringement" of any kind, EVOX "must first demonstrate direct infringement" by a third party. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 937 (9th Cir. 2010). Although EVOX speculates that users have used DreamUp to create infringing works, Compl. ¶ 126, EVOX provides zero examples of any alleged direct infringements by DreamUp users. Even assuming the outputs identified at paragraphs 79-80 of the Complaint were generated by users of DreamUp without EVOX's permission, such facts would not save this claim because

the alleged DeviantArt outputs do not infringe EVOX's protected expression. *See supra* § IV.B.2.

*Second*, even if DreamUp users have generated infringing outputs, EVOX's claim still fails because "a company is not liable as a copyright infringer for merely providing a service to the general public with knowledge that it will be used by some to infringe copyrights." *Cox*, 607 U.S. at 587. "The provider of a service is contributorily liable for [a third-party] user's infringement only if it intended that the provided service be used for infringement." *Id.* at 592-93. There are only two ways to establish such intent: (1) inducement or (2) tailoring the service for infringement. *Id.* at 593. EVOX has not, and cannot, plausibly allege either.

EVOX fails to plausibly allege inducement. "A provider induces infringement if it actively encourages infringement through specific acts," such as marketing software "as a tool to infringe copyrights." *Id.* at 593; *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937-38 (2005) (describing evidence of inducement, including a newsletter "containing links to articles promoting [] software's ability to access popular copyrighted music"). Here, EVOX identifies no promotion, marketing, instruction, or communication between DeviantArt and any alleged direct infringer of the Copyrighted Photographs. Rather, EVOX attempts to plead inducement based on the release of DreamUp "free of charge" and DeviantArt's alleged failure to "adopt any available filtering . . . measures." Compl. ¶ 131. Even if true, these allegations fail because courts cannot "find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Cox*, 607 U.S. at 594; *see also Lee v. SBS Corp.*, No. 26-cv-3144, 2026 WL 2261023, at *5 (C.D. Cal. Aug. 5, 2026) (dismissing contributory infringement claim where plaintiff had "not alleged that [defendants] actively encouraged infringement through specific acts").

EVOX also fails to plausibly allege DreamUp is tailored to infringement of the

Copyrighted Photographs. Services "tailored to" infringement are those "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Cox*, 607 U.S. at 593. The word "tailor" never appears in the Complaint. Instead, EVOX admits DeviantArt did not "fine tune" Stable Diffusion. *See supra* § IV.B.1.[4] Nor are there facts showing DreamUp is incapable of substantial noninfringing uses. Materials cited in the Complaint support the opposite inference. DeviantArt's November 2022 press release promotes use of DreamUp to create "almost anything you can imagine." Compl. ¶ 70 & n.15. Moreover, the research paper EVOX cites suggests Stable Diffusion version 1.4 generates outputs that may be "near-copies of training examples" less than .000063% of the time. Compl. ¶ 61 & n.8 (citing Carlini et al., *Extracting Training Data from Diffusion Models* (Jan. 2023), 5-6, https://arxiv.org/abs/2301.13188).

Lastly, EVOX's allegations that DeviantArt "knowingly and materially contributed" to infringement are irrelevant. The Supreme Court rejected that basis for contributory liability in *Cox*. *Compare* Compl. ¶¶ 126-28, 130 *with Cox*, 607 U.S. at 596 ("[C]ontributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it.").

#### *4. EVOX's DMCA Claims Fail (Count Five).*

EVOX's DMCA claims fail because it does not (and cannot) plausibly allege facts satisfying the removal or scienter elements necessary.

EVOX appears to assert two separate DMCA claims against DeviantArt: *first*, under 17 U.S.C. § 1202(b)(1), that DeviantArt intentionally removed EVOX's CMI from the Copyrighted Photographs, *see* Compl. ¶ 146; and *second*, under 17 U.S.C.

[4] EVOX also alleges, without any factual support, that DeviantArt "distribute[s]" its "AI image generator models . . . , including [on] Hugging Face." Compl. ¶ 125; *see also id.* ¶¶ 127, 130-31, 133. The Court should disregard these conclusory assertions. *See Iqbal*, 556 U.S. at 678.

§ 1202(b)(3), that DeviantArt distributed copies of the Copyrighted Photographs knowing EVOX's CMI was removed, *see* Compl. ¶ 142. Both fail.

Under section 1202(b)(1), a plaintiff must plead: (1) the existence of CMI associated with the work; (2) removal or alteration of that CMI; (3) that removal or alteration of CMI was intentional; and (4) that the defendant knew, or had reasonable grounds to know, that the removal would induce, enable, facilitate, or conceal infringement. *Beaulier v. Meta Platforms, Inc.*, No. 26-cv-2632, 2026 WL 2521848, at *2 (N.D. Cal. Aug. 26, 2026); *see also Doe 1 v. GitHub, Inc.*, --- F.4th --- , 2026 WL 2728464, at *5 (9th Cir. 2026).

EVOX alleges its name and photograph titles are the CMI associated with its Copyrighted Photographs. Compl. ¶¶ 140, 142. But EVOX cannot plead facts satisfying the remaining elements as to DeviantArt because EVOX alleges its CMI was already removed during Stable Diffusion's training—with which DeviantArt is not alleged to have helped. *See id.* ¶¶ 55, 57, 70, 128, 142, 146; *Andersen*, 700 F. Supp. 3d at 871 (dismissing DMCA claims noting DeviantArt's "stronger position" because there were "no allegations that [DeviantArt] was involved . . . with the training of Stable Diffusion where, presumably, the removal or alteration of the CMI occurred"). Moreover, to the extent EVOX's section 1202(b)(1) claim pertains to outputs from DreamUp, as a downstream user of Stable Diffusion, DeviantArt could not have intended to remove CMI that EVOX alleges was already removed during the training of Stable Diffusion. *See* Compl. ¶ 147.

Under section 1202(b)(3), a plaintiff must allege (1) the CMI connected with the work; (2) that the defendant distributed the work or copies of it; (3) while knowing that CMI had been removed or altered without authority; and (4) while knowing, or having reasonable grounds to know, that the distribution would induce, enable, facilitate, or conceal infringement. *Beaulier*, 2026 WL 2521848, at *5. EVOX cannot satisfy elements two, three, or four.

A section 1202(b)(3) claim fails as a matter of law where a defendant creates and distributes a *new* work without plaintiff's CMI. *GitHub*, 2026 WL 2728464, at *5 (affirming dismissal with prejudice of section 1202(b)(1) and (b)(3) claims against AI services because "[o]ne who creates a new work and fails to include CMI cannot be said to have 'removed' or 'altered' anything."). Here, the alleged DreamUp outputs are unquestionably "new works" given the numerous differences from EVOX's photos. *See supra* § IV.B.2. EVOX thus fails element two.

EVOX cannot plead elements three or four either. Because EVOX alleges that CMI was removed during the training of Stable Diffusion—by parties other than DeviantArt—there was no CMI for DeviantArt to remove when generating outputs. And, because EVOX alleges that "[s]uch removal . . . also made it difficult or impossible for third party users of Stable Diffusion" to know of alleged unauthorized use, Compl. ¶ 147, DeviantArt, as a mere user of the pre-trained model, could not have the requisite knowledge under elements three or four.

Amendment of EVOX's DMCA claims would be futile according to EVOX's own allegations.

### C. EVOX's Claims in Count One and Count Five Are Time-Barred.

Count One in its entirety and the DMCA claims in Count Five connected to the development and integration of Stable Diffusion into DreamUp should be dismissed with prejudice for the independent reason that they are time-barred under the Copyright Act's three-year statute of limitations. *See* 17 U.S.C. § 507(b); *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1025 (9th Cir. 2019) (DMCA claims subject to 17 U.S.C. § 507(b)). Such dismissal is appropriate where, as here, a claim is time-barred "from the face of the complaint" and the plaintiff has not alleged facts supporting reasonable delay in discovery or tolling. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254-58 (9th Cir. 2013); *In re Napster, Inc. Copyright Litig.*, No. 04-cv-3004, 2005 WL 289977, at *3-5 (N.D.

Cal. Feb. 3, 2005) (granting motion to dismiss time-barred copyright claims with prejudice where asserted lack of knowledge unreasonable).

Ordinarily, "[i]n the copyright context, a claim accrues 'when an infringing act occurs,' *i.e.*, when the infringer 'violates any of the exclusive rights of the copyright owner.'" *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1239-40 (9th Cir. 2022) (citations omitted); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014). The Complaint alleges that Stable Diffusion and DreamUp were made available to the public in 2022. Compl. ¶¶ 54, 69, 70 & n.15. Accordingly, the statute of limitations expired in 2025 for all of the alleged unauthorized removal of CMI and unauthorized reproduction, distribution, and use of the Copyrighted Photographs (with or without CMI) in 2022 in connection with the development, use, and release of Stable Diffusion and DreamUp. *Id.* ¶¶ 51-57, 70-71.

EVOX, however, seeks to invoke the Ninth Circuit's "discovery rule" exception to delay accrual of its claims to July 2023. *Id.* ¶ 74. The discovery rule delays accrual to "when a party discovers, or reasonably should have discovered, the alleged infringement." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020) (affirming dismissal of copyright claim based on constructive knowledge triggering statute of limitations); *Starz*, 39 F.4th at 1246. Thus, EVOX must plausibly allege "facts that show [it] lacked knowledge [of the infringement] and that in the exercise of reasonable diligence the facts could not have been discovered earlier" than July 2023. *Michael Grecco Prods., Inc. v. BDG Media Inc.*, No. 19-cv-4716, 2020 WL 3957565, at *4 (C.D. Cal. Feb. 26, 2020), *aff'd in part, rev'd in part and remanded*, 834 F. App'x 353, 354 (9th Cir. 2021). The allegations in the Complaint show the opposite. Here, EVOX alleges that:

- It licenses the Copyrighted Photographs for display-only use to automotive websites, such as Kelley Blue Book, using a secure API that it monitors "to

detect and prevent unauthorized access." Compl. ¶¶ 31, 36.

- The LAION-2B-en dataset at issue in this case "contains URL links to at least 103,957 Copyrighted Photographs—all hosted on websites belonging to third party automotive companies—as documented by EVOX in a search of the LAION-2B-en dataset." *Id.* ¶ 44; *id.* Ex. B (listing over 5,000 URLs from licensee Kelley Blue Book).
- The LAION-2B-en dataset was built from the "publicly available" Common Crawl repository of webpages. *Id.* ¶¶ 41-42.
- "Many of the 103,957 URL links to the Copyrighted Photographs in the LAION datasets also contain the exact EVOX 'file name' for the Copyrighted Photograph." *Id.* ¶ 47.
- Stable Diffusion, released in August 2022, was trained prior to such release using unauthorized copies of the Copyrighted Photographs downloaded by the Stability Entities from the URLs within the LAION-2B-en dataset. *Id.* ¶¶ 51, 53-55, 141-42.

Based on these allegations, EVOX knew or should have known of the alleged downloading of all 103,957 Copyrighted Photographs from its automotive licensee websites in 2022—or at least the 5,000 Copyrighted Photographs downloaded via Kelley Blue Book URLs. Yet EVOX waited until July 2026 to file this case.

EVOX's asserted justification is that "Defendants' infringement was concealed." *Id.* ¶ 74. But none of the foregoing details were concealed from EVOX. EVOX thus fails to plausibly allege, with the requisite particularity under Rule 9(b), concealment tolling, which requires: (1) "'affirmative acts' of concealment," (2) lack of "actual or constructive knowledge of the facts giving rise to [the] claim," and (3) "diligence" in pursuing "the facts giving rise to the cause of action." *Lynwood Invs. Cy Ltd. v. Konovalov*, No. 20-cv-3778, 2021 WL 1164838, at *10-11 (N.D. Cal. Mar. 25, 2021). There is nothing diligent about ignoring over 100,000 alleged

unauthorized downloads of the Copyrighted Photographs for nearly a year after Stable Diffusion was released to the public. The Complaint's reliance on public press statements and research papers, Compl. ¶¶ 39, 51, 57-61, 68, 70—*all from January 2023 or earlier*—only compounds the unreasonableness of EVOX's assertion that it "did not discover, and in the exercise of reasonable diligence could not have discovered, Defendants' unauthorized reproduction and use of the Copyrighted Photographs until July 2023." *Id.* ¶ 74.

The Court should reject EVOX's conclusory, undifferentiated assertion that "Defendants'" actions were "concealed" and dismiss as time-barred Count One entirely and Count Five regarding DMCA claims connected to the development and use of Stable Diffusion before July 1, 2023. *See Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1148-50 (N.D. Cal. 2007) (dismissing copyright claims as time-barred where successful songwriter's purported lack of knowledge was unreasonable). And because EVOX cannot save its claims with amended allegations that "contradic[t] an earlier assertion made in the same proceeding," dismissal with prejudice is appropriate. *Airs Aromatics*, 744 F.3d at 600.

## V. CONCLUSION

For the foregoing reasons, DeviantArt respectfully requests that the Court grant its Motion and dismiss all claims against DeviantArt with prejudice.

Dated: October 12, 2026 **DLA PIPER LLP (US)**

By: */s/ Gina L. Durham*
GINA L. DURHAM
RACHEL E. FERTIG
ERIC C. HALL
RUBY A. STRASSMAN

*Attorneys for Defendant,*
DEVIANTART, INC.

**CERTIFICATION OF COMPLIANCE WITH L.R. 11-6.2**

Undersigned, counsel of record for Defendant DeviantArt, Inc., certifies that this brief contains 6,789 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 12, 2026 **DLA PIPER LLP (US)**

By: */s/ Gina L. Durham*
Gina Durham

**DECLARATION OF CONFERENCE OF COUNSEL**

Pursuant to Central District Local Rule 7-3, the undersigned declares under the penalty of perjury that, on October 1, 2026, counsel for Defendant DeviantArt, Inc. ("DeviantArt") Rachel Fertig, Ruby Strassman, and Eric Hall engaged in a good faith meet and confer by video conference with Kenneth Taketa and Ahnna Chu, counsel for Plaintiff EVOX Productions, LLC, about the grounds for DeviantArt's motion to dismiss and any potential resolution. During the conference, counsel for DeviantArt stated its position that Counts One, Two, Four, and Five of the Complaint fail to state a claim against DeviantArt. EVOX did not agree to dismiss or amend any claim against DeviantArt. As a result, the parties were unable to reach a resolution that would eliminate the need for this Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 12, 2026 **DLA PIPER LLP (US)**

By: */s/ Eric C. Hall*
Eric C. Hall